**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Franklin PURTHER,
Defendant-Appellant.**

**No. 86–1636.**

United States Court of Appeals,
Sixth Circuit.

Argued May 8, 1987.
Decided July 15, 1987.

Neil H. Fink (argued), Detroit, Mich., Michael J. Rex, for defendant-appellant.

F. William Soisson, Asst. U.S. Atty., Detroit, Mich., Patricia G. Blake, Asst. U.S. Atty. (argued), for plaintiff-appellee.

Before LIVELY, Chief Judge; ENGEL and KRUPANSKY, Circuit Judges.

LIVELY, Chief Judge.

The defendant-appellant was convicted of mail fraud and sentenced to serve a prison term. In addition, the district court ordered him to make restitution to the individual victims of the mail fraud scheme in the amount of $731,209. On appeal the defendant contends that the district court erroneously ordered restitution, claiming that the offenses for which he was convicted took place prior to the effective date of the Victim and Witness Protection Act of 1982 (the Act). The restitution provisions of the Act were added to the sentencing chapter of Title 18 of the United States Code by section (5)(a) of Public Law 97–291, and are codified as 18 U.S.C. §§ 3579 and 3580 (1982). In general, these provisions permit a court, when sentencing a defendant found guilty of an offense under the federal criminal laws, to order the defendant to make restitution to any victim of the offense, in addition to or in lieu of any other penalty permitted by law. 18 U.S.C. § 3579(a).

I.

Defendant was charged with designing and executing a scheme to defraud investors by inducing them to invest in a series of fictitious limited partnerships that were formed between July 1978 and July 1982. The information to which defendant pled guilty charged that on August 17, 1983, defendant made use of the United States mails to deliver a partnership agreement, a forged warranty deed and fictitious closing statements and lease agreement in furtherance of the fraudulent scheme. At the sentencing hearing the district court imposed a sentence of confinement and announced that restitution would be required. In order to enable it to decide the amount of restitution the court directed the probation service to determine the amounts lost by victims of the scheme. A hearing date was set at which the restitution issues were to be resolved.

At the hearing Purther argued that there could be no restitution ordered since the records showed that all of the victims had invested their money before January 1, 1983, the effective date of the Act. Since the scheme was a fraud, he argued, they suffered the losses when they invested. Purther's attorney argued that the date of the losses determined whether the Act applied and he contended there was no dispute that all the losses occurred between 1978 and 1982. The district court ruled that the dates of the victims' investments were not controlling since the mail fraud scheme to which the defendant pled guilty was a continuing enterprise. Furthermore, the court noted, Purther pled guilty to a particular act in furtherance of the scheme which occurred some eight months after

the effective date of the Act. The court stated that it would order restitution of all money extracted by the scheme regardless of when the investments were made.

After the probation service reported that it had identified losses of $762,833 by victims of the scheme the district court entered an order directing Further to show cause why it should not order restitution for the full amount of the victims' losses. A complication came to light at the first show cause hearing; Further had been placed in involuntary bankruptcy and a trustee had taken control of all his assets. After liquidating several pieces of property in which Further had an interest, the trustee advised the district court that he had about $60,000 available for administration expenses and creditors' claims. Counsel for Further argued that restitution should be ordered for "a realistic amount." He informed the court that the defendant had never grossed more than $80,000 per year from his accounting practice, and that it would be impossible for him to repay $762,-833 within five years after his release from prison. He offered no other evidence of Further's resources or obligations.

Because of uncertainty about the effect of the bankruptcy proceedings on the order of restitution and discrepancies between the trustee's records and those of the Department of Justice, the district court adjourned the show cause hearing several times. The discrepancy between the amount of the claims filed with the trustee and those identified by the probation service was never reconciled. The probation service did discover a duplication in its report, and eventually advised the court that it had identified victim losses in the amount of $731,209. The district court ordered the FBI to investigate whether Further had concealed assets that the trustee had failed to uncover. The FBI reported that the records of the "enterprises" were hopelessly inadequate and that it had been unable to turn up a "stash." Further had admitted extracting between $1,000,000 and $3,000,000 from the victims, and there was evidence that he had made payments of "interest" and "return on investment" to some of them. Nevertheless, no one disputed the $731,209 figure, and the district court expressed its skepticism that Further had no assets left beyond the $60,000 fund held by the trustee in bankruptcy.

At this point counsel for Further advised the district court of the court's obligation under 18 U.S.C. § 3580 to consider the defendant's earning capacity and financial requirements and those of his dependents as well as the defendant's financial resources. However, counsel offered no evidence with respect to these factors. At the final session of the show cause hearing the district court stated that $731,209 was the "only real figure I have," and announced that he was ready to enter an order setting this as the amount of restitution. Defense counsel said he had nothing to offer on the accuracy of the figure, but again reminded the court of the factors it was required to take into consideration. The court responded, "[t]he manner in which we pursue the effort to collect the amount of restitution obviously will take all those considerations into account, his financial condition and the rest."

Finding that the defendant had failed to show any good cause why he should not enter a restitution order based on the report of the probation service, the district court ordered Further to make restitution to the persons identified in the amounts set forth on the probation service list of victims attached to the order, in the total amount of $731,209.

## II.

Further presents two issues on appeal. He renews his argument that the offense was complete when the victims suffered losses, and that the Act therefore does not authorize restitution. He also contends that the district court erred by not considering the statutory factors when it ordered restitution and leaving that step as part of later enforcement proceedings.

### A.

We agree with the district court's conclusion that Further pled guilty to a continuing offense that was operational at

least until August 17, 1983. As the court stated in *United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir.), *cert. denied*, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 47 (1975), it is not the scheme to defraud, but the use of the mails to execute the scheme that constitutes the offense of mail fraud. The offense may be committed by use of the mails to lull victims or otherwise further the goal of the scheme after money had been received. *Id.* at 799. So long as the perpetrator is using the mails to further the scheme, he is engaged in the offense.

■ Two courts of appeals have considered the question of applicability of the restitution provisions of the Act to mail fraud cases where the effective date of the Act became an issue. In *United States v. Martin*, 788 F.2d 184, 189 (3d Cir.1986), the court held that the losses resulting from a mail fraud scheme "must be separately identified as those which occurred before and those which occurred after January 1, 1983 for the purpose of restitution under the Victim and Witness Protection Act." (Footnote omitted). This identification is required, according to the *Martin* court, because restitution can only be ordered under the Act for amounts the government can show by a preponderance of the evidence to represent the losses suffered by the victims after January 1, 1983.

The court in *United States v. Barnette*, 800 F.2d 1558 (11th Cir.1986), *cert. denied* —— U.S. ——, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987), reached a different conclusion on facts very similar to those in the present case. In *Barnette* the defendant was convicted, inter alia, of a conspiracy that was charged in the indictment to have begun in July 1976 and to have continued until August 30, 1983. Although the last overt act charged in the indictment was alleged to have occurred in March 1982, there was evidence of other acts that were performed in furtherance of the conspiracy after January 1, 1983. The court affirmed a restitution order on the basis of the amount netted from the conspiracy, though the losses were suffered by the victim prior to January 1, 1983.

The Act authorizes district courts to order a defendant to "make restitution to any victim of the offense." 18 U.S.C. § 3579(a)(1). The order may require the defendant who has committed a property offense to return the property, or, "if return of the property ... is impossible, impractical, or inadequate, [to] pay" the larger of the value on the date of the loss or its value on the date of sentencing. 18 U.S.C. § 3579(b)(1)(B). Restitution is based on a finding or admission that the defendant is guilty of an offense. The date of the loss is significant only in determining which of two values will be used in setting the amount, not in determining whether restitution may be ordered under the Act. The language referring to the effective date of the Act states that it [the Act] "shall apply with respect to *offenses* occurring on or after January 1, 1983." Victim and Witness Protection Act of 1982, Pub.L. No. 97–291, § 9(b)(2), 96 Stat. 1248, 1258 (1982). (Emphasis added).

A mail fraud scheme that is carried out over a period of time resembles a typical continuing conspiracy in many respects. It would be virtually impossible to determine precisely when each victim of a scheme such as Purther's actually suffered his or her loss. This is especially so where, as here, the perpetrator makes some payments of "interest" or "return on investment" and continues to send fraudulent documents to lull the victims long after their last payments. The district court correctly held that Purther pled guilty to the offense of mail fraud involving a scheme which continued in operation after January 1, 1983, and therefore, was subject to the restitution provisions of the Act.

#### B.

The procedure for issuing an order of restitution is set out in 18 U.S.C. § 3580, which provides in pertinent part:

(a) The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of

the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

(b) The court may order the probation service of the court to obtain information pertaining to the factors set forth in subsection (a) of this section. The probation service of the court shall include the information collected in the report of presentence investigation or in a separate report, as the court directs.

\*　　\*　　\*　　\*　　\*　　\*

(d) Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

This court has held that the record must contain some indication that the sentencing court considered the defendant's financial condition in ordering restitution. *United States v. Durham,* 755 F.2d 511 (6th Cir.1985). We have never held that the court must make findings on the defendant's financial condition, and it is clear that the statute does not require findings. Nevertheless, at least one court has invoked its supervisory authority to require "specific findings as to the factual issues that are relevant to the application of the restitution provisions" of the Act. *United States v. Palma,* 760 F.2d 475, 480 (3d Cir.1985). The court in *United States v. Atkinson,* 788 F.2d 900 (2d Cir.1986), declined to follow *Palma,* concluding that a requirement of such findings would "unnecessarily encumber the sentencing process." *Id.* at 902. We agree. The statute only mandates that the sentencing court consider stated factors "and such other factors as the court deems appropriate." § 3580(a). Once the required factors are considered the court has very broad discretion in setting the terms of the restitution order. *United States v. Richard,* 738 F.2d 1120, 1122 (10th Cir.1984).

At oral argument it was suggested that *United States v. Shackleford,* 777 F.2d 1141 (6th Cir.1985), *cert. denied, sub nom. Brooks v. United States,* —— U.S. ——, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986), requires the district court to make findings with respect to a defendant's financial resources and need. That was not the holding of *Shackleford* where the question was whether a defendant had been ordered to pay restitution pursuant to 18 U.S.C. §§ 3579 and 3580, or 18 U.S.C. § 3651. *Id.* at 1146. The dissent in *Shackleford* stated in dicta that our *Durham* decision required the district court "to make certain factual findings before restitution is imposed," citing *Durham. Id.* at 1148. However, *Durham* required a finding on the question of whether the victim of a crime had received, or would receive, compensation for its losses. It did not require findings on the defendant's resources and needs. 755 F.2d at 514–15.

The problem in the present case arises from the fact that the court appeared to state that it could defer consideration of the statutory factors until enforcement proceedings were initiated after Purther's release from custody. The statute is not susceptible to this construction. Section 3580(a) requires the court to consider the listed factors "in determining whether to order restitution ... and the amount of such restitution." As the court in *Atkinson* noted, a different balancing is required at the time of enforcement than that required when restitution is ordered. Because an enforcement proceeding would entail the possibility of reincarceration for failure to pay restitution at a time when a defendant was unable to pay, there would be constitutional considerations not present at the time of sentencing.

The record is somewhat confusing. The district court stated that the defendant had failed to show cause why the amount

of restitution should not be set at $731,209. This was the only evidence of the amount of verified losses and defense counsel stated that he could not contest it. The only evidence of the amount of Purther's resources was the trustee's report of approximately $60,000. The district court was not convinced that Purther had no other assets. Defense counsel's statements showed that there was a dispute as to the proper amount of restitution. When this occurs, section 3580(d) comes into play. That section places a particular burden on each party. Once the government has shown the amount of loss sustained by the victims, it is the defendant's burden to demonstrate the extent of his financial resources and obligations. 18 U.S.C. § 3580(d). Where the defendant offers no evidence with respect to these factors, the court should not be required to delay its decision further. In fact, the statute requires that imposition of restitution not "unduly complicate or prolong the sentencing process." 18 U.S.C. § 3579(d).

 We do not construe the district court's reference to consideration of the factors at the time of enforcement as meaning it had given no consideration to them in setting the amount of restitution. The court clearly was aware of the trustee's report with reference to the defendant's financial resources. The defendant produced no evidence relating to the other factors, only statements of counsel, though there were several opportunities to present such proof. We believe the *Durham* requirement was satisfied. Having held that the defendant had failed to show cause why the amount produced by the probation service should not be used, the court was merely pointing out that the defendant would have an opportunity at a later time to avoid punishment for failure to satisfy the restitution order. This statement by the court also answered an earlier argument by the defendant. He had maintained that since he was in bankruptcy, he was obviously indigent, and therefore could not be required to repay a large sum. This court and others have held that indigency is not a bar to an order of restitution. See *United States v. Mounts*, 793 F.2d 125, 128

(6th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986), and cases cited therein. Since a defendant is given five years after the end of a sentence of imprisonment in which to satisfy a restitution order, his indigency at time of sentencing is not controlling. His assets and earnings at a later time may change that condition.

The judgment of the district court is affirmed.