## UNITED STATES of America

### v.

## Gary W. UNDERWOOD.

### Crim. No. 4–87–17.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 15, 1987.

Joseph T. Walbran, Asst. U.S. Atty., Minneapolis, Minn., for the U.S.

---

**2.** *See, e.g., Kresse v. Home Insurance,* 765 F.2d   753, 754 (8th Cir.1985).

Paul Rogosheske, South St. Paul, Minn., for defendant.

## ORDER

ROSENBAUM, District Judge.

The Court has received and considered the defendant's motion, pursuant to Rule 35 of the Federal Rules of Criminal Procedure (Fed.R.Crim.P.), for reduction and correction of sentence. Documents and letters have been submitted by the defendant and a memorandum has been submitted by the United States Probation Officer involved. A hearing was held October 8, 1987. The Court has considered these matters in light of Rule 35, Fed.R.Crim.P., and 18 U.S.C. §§ 3579 and 3580.

*Discussion*

A. Consideration of 18 U.S.C. § 3580 Factors

The defendant argues that the Court's order for restitution is in error because the Court failed to consider the factors set forth in 18 U.S.C. § 3580.[1] Further, the defendant argues that the Court's failure to enter specific findings as to those factors is in error, citing *United States v. Palma*, 760 F.2d 475, 480 (3rd Cir.1985). Defendant's arguments are not well taken.

The Court notes a carefully drawn presentence investigation report (PSI) in this case consisting of some eight (8) single spaced pages. The Court, at the plea, made clear that facts revealed in the PSI would enter into the sentencing decision. At sentencing, the Court was told by defense counsel that both he and the defendant had read the PSI. That report, as to which neither the defendant nor his attorney had either objection or correction, speaks at length to each of the 18 U.S.C. § 3580(a) factors.

Based upon its consideration of this report and defendant's guilty plea, the Court made its sentencing and restitution decisions.

The defendant argues the necessity of findings, as set out in the Third Circuit, per *Palma*, 760 F.2d at 480. The Eighth Circuit, in *United States v. Florence*, 741 F.2d 1066, 1068–69 (8th Cir.1984), implicitly rejected the rigid standard which would later be established for the Third Circuit by *Palma*. Since *Palma*, the Second Circuit and the Sixth Circuit have explicitly rejected the Third Circuit rule. *United States v. Atkinson*, 788 F.2d 900, 902 (2nd Cir.1986); *United States v. Purther*, 823 F.2d 965, 969 (6th Cir.1987). The *Purther* court was explicit:

> ... it is clear that the statute does not require findings. Nevertheless, at least one court has invoked its supervisory authority to require "specific findings as to the factual issues that are relevant to the application of the restitution provisions" of the Act. *United States v. Palma*, 760 F.2d 475, 480 (3d Cir.1985). The court in *United States v. Atkinson*, 788 F.2d 900 (2nd Cir.1986), declined to follow *Palma*, concluding that a requirement of such findings would "unnecessarily encumber the sentencing process." *Id.* at 902. We agree. The statute only mandates that the sentencing court consider stated factors "and such other factors as the court deems appropriate." § 3580(a). Once the required factors are considered the court has very broad discretion in setting the terms of the restitution order.

*Purther*, 823 F.2d at 969.

It appears to the Court that the better rule, suggested by the Eighth Circuit, and adopted by the Second and Sixth, is to permit the trial court to consider the statutory factors, and render its restitution decision within its sound discretion. The Court, therefore, declines to make individu-

---

1. Section 3580(a) provides:
   (a) The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

al findings, citing instead, the facts set forth in the PSI.[2]

### B. Restitution Order

The defendant next suggests that 18 U.S.C. § 3579(e)(1) bars imposition of restitution because the victim of the crime has already been promised compensation. It is defendant's theory that Mr. Underwood, having reached a compromise agreement with Norwest, has stripped the Court of its discretion to enter any restitution award. This is the defendant's position, but it is not the position of the Congress in 18 U.S.C. § 3579.

The first sentence of § 3579(e)(1) states: The court shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation, except that the court may, in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation.

The defendant points to his "Agreement" with Norwest Bank Red Wing, N.A., and Norwest Corporation (referred to collectively as "Norwest"). In this document, defendant acknowledges his embezzlement of over $725,000, of which over $650,000 remains owing, and agrees to repay the total sum of $150,000 by payment of 20% of his future income. This $150,000 is to be in compromise of the entire sum lost by Norwest.

■ The Court holds that this agreement does not deprive the Court of its power to order restitution. The clear intent to 18 U.S.C. § 3579(e)(1) is to reimburse either the victim of a crime or a third party payor who has provided total or partial reimbursement to the crime victim. A criminal's agreement to indemnify his victim at a date in the future does not necessarily make that victim one who "is to receive

compensation" as contemplated by § 3579, and thereby foreclose the possibility of restitution. To adopt the defendant's theory would eviscerate the restitution statute.

One can easily contemplate the following scenario. The defendant steals $105,000 from an uninsured victim, leaving the victim destitute. The defendant sets aside $5,000 and secretes the $100,000. The defendant approaches the victim saying, "I still have $5,000 which I will give you immediately in trade for a release. The alternative is that I will give you nothing and you can hope a judge may give you restitution after I get out of prison." The victim signs. And the defendant advances the argument being heard here. Is the defendant now to hold the secreted $100,000 safe from a restitution order? No![3] The Court holds that Mr. Underwood will be required to pay restitution pursuant to 18 U.S.C. § 3579.

■ As a second argument, and on the other hand, counsel for the defendant has appropriately pointed out the statutory dictate of 18 U.S.C. § 3579(f) setting five (5) years from the expiration of imprisonment or the end of probation as the last date upon which restitution is to be paid. In light of this statute, and in recognition of the financial condition of the defendant, the restitutionary sum, previously set at $100,000, is reduced to $40,000, which sum is to be paid at the rate of $8,000 per year, commencing on the first anniversary of the defendant's release from confinement. It appears to the Court that the said sum is well within the defendant's financial capacity.

In this regard, defendant's petition suggests that his earnings for the several months immediately preceding his incarceration were extremely low. This may be true, but it must be observed that the

---

2. Since the initial sentence, the Court has considered the memorandum prepared by Garold Ray, United States Probation Officer, submitted in response to the defendant's petition. The Court has also considered the proceedings of the October 8, 1987, hearing.

3. Is Mr. Underwood, having agreed to repay money to his victim, now a "person who has

compensated the victim" of his own crime. Is the Court now restricted to ordering Mr. Underwood to make restitution to himself? Of course not! A defendant may not be heard to assert his own wrongdoing and his advantageous civil agreement in order to bootstrap himself into a statutory protection for an insurer or third party benefactor of a victim of a crime.

position from which he was terminated, and in which he misappropriated almost three quarters of a million dollars, paid a relatively high income. In addition, upon his being discovered, he voluntarily sought only a menial position ·which he, himself quit, to spend time with his family, prior to incarceration. The Court finds it reasonable and probable that subsequent to his service of confinement, the defendant will again be able to obtain a responsible and reasonably remunerative position.

Lastly, the Court has considered the defendant's motion to reduce his sentence. The Court declines to make the requested reduction. Therefore, IT IS HEREBY ORDERED that:

1. The Court's order for restitution dated June 11, 1987, is vacated, and it is ordered that defendant make restitution to Norwest Corporation in the sum of $40,000 which sum shall be paid in an amount of not less than $8,000 per year commencing upon the first anniversary of defendant's release from confinement.

2. The Court's order for confinement dated June 11, 1987, is affirmed.