865 F.2d 1269
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William PADGETT, a/k/a Bill Padgett, Defendant-Appellant.
 No. 88-5698.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1989.
 
 Before MERRITT and RALPH B. GUY, Jr., Circuit Judges, GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, William Padgett, entered an Alford[1] guilty plea to one count of a ten-count mail fraud indictment. Padgett was sentenced to five years imprisonment with all but six months of the sentence being suspended. Upon release, the defendant was to be placed on probation for five years and was ordered to pay $15,000 restitution as a condition of probation.
 
 
 2
 Padgett subsequently filed a motion pursuant to Fed.R.Crim.P. 35(a) and (b). He sought reduction of his sentence and also claimed the restitution order was illegal. The trial court reduced his term of imprisonment to time served but denied the Rule 35(a) motion as it related to the restitution requirement. Padgett now appeals this denial.
 
 
 3
 Upon a review of the proceedings below, we conclude that the order of restitution as a condition of probation was proper and we affirm.
 
 I.
 
 4
 On appeal, defendant makes a two-pronged argument. He first argues that probation and restitution were ordered under the Federal Probation Act (FPA), 18 U.S.C. Sec. 3651, et seq. Padgett then argues that under the FPA restitution is limited to the actual damages or loss suffered by the victim and that no such computation was ever made here. The government counters by arguing that probation and restitution were imposed pursuant to the Victim and Witness Protection Act (VWPA),[2] 18 U.S.C. Secs. 3579 and 3580. The government further argues that the sentencing judge complied with the requirement of the VWPA. In order to put these arguments in their proper context, a brief review of the facts is necessary.
 
 
 5
 Defendant was indicted on June 10, 1987, on ten counts of violating 18 U.S.C. Secs. 1341 and 1342, the mail fraud statute. The indictment charged defendant with devising and participating in a scheme to defraud used automobile purchasers by altering, or having altered, the odometers on used cars brought into Kentucky for resale by defendant. When an automobile was sold in Kentucky a new title was issued and sent through the United States mail to the purchaser. The new titles reflected the altered odometer readings. The indictment charged that the offenses occurred on or before August 14, 1984, and through at least October 25, 1984. Each count in the indictment incorporated the common scheme and set forth a separate mailing and victim. The indictment stated no amount of monetary loss to any of the victims of the scheme.
 
 
 6
 On October 16, 1987, when the defendant entered his Alford plea, the district judge scrupulously complied with the plea-taking provisions of Fed.R.Crim.P. 11. Among other things, the judge inquired as to whether Padgett had profited from the scheme and was informed that he had. Defendant was specifically advised of the possibility of a $15,000 restitution order imposable under "either the probation statute or under 3579 because it's part of the Victim Witness Impact Act which was effective 1/1/83." (App. 36). The defendant acknowledged that restitution up to $15,000 was possible (App. 37).
 
 
 7
 The court also learned that defendant's plea was pursuant to a plea bargain that specified that in return for defendant's plea to count eight of the indictment, the other nine counts would be dropped. Additionally, the government would make no sentence recommendation, would not oppose probation and would inform the court of defendant's cooperation, if any, in the continuing investigation. The defendant was also informed that the court would order and review a presentence report which the defendant and his counsel would also have the opportunity to review.
 
 
 8
 On January 28, 1988, defendant was sentenced. Prior to sentencing, the court assured itself that defendant and counsel had reviewed the presentence report. Neither defendant nor his counsel offered any corrections to the report. Fed.R.Crim.P. 32(c)(3)(A). The presentence report contained a section entitled "Victim Impact Statement." This section is required by Fed.R.Crim.P. 32(c)(2) which reads:[3]
 
 
 9
 The presentence report shall contain--
 
 
 10
 (A) any prior criminal record of the defendant;
 
 
 11
 (B) a statement of the circumstances of the commission of the offense and circumstances affecting the defendant's behavior;
 
 
 12
 (C) Information concering any harm, including financial, social, psychological, and physical harm, done to or loss suffered by any victim of the offense; and
 
 
 13
 (D) any other information that may aid the court in sentencing, including the restitution needs of any victim of the offense.
 
 
 14
 In discussing the loss suffered by the ten victims of defendant's odometer tampering, the probation officer fixed the loss to each at $1,500. This sum was arrived at by reference to 15 U.S.C. Sec. 1989 which provides for civil actions by victims against perpetrators of odometer fraud. This section provides:
 
 
 15
 (a) Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of--
 
 
 16
 (1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and
 
 
 17
 (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.
 
 
 18
 (b) An action to enforce any liability created under subsection (a) of this section, may be brought in a United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises.
 
 
 19
 The $15,000 restitution amount was arrived at on the basis of awarding the statutory $1,500 as the measure of loss to each of the ten victims named in the indictment. Neither Padgett nor his two attorneys contested this portion of the presentence report when given an opportunity to address the court. The court inquired of the probation officer if the victims had been identified for restitution purposes and learned that they had. The court also noted on the record that Padgett's wife was continuing to operate Padgett's used car business.
 
 
 20
 Against this factual backdrop we now return to the issues raised on appeal.
 
 II.
 
 21
 It is undisputed that the sentencing judge could have ordered restitution under either the FPA or the VWPA. In fact, as noted earlier, Padgett was told on the day his plea was accepted that restitution could be imposed under either Act. Unfortunately, at the time of sentencing, no specific mention of either Act was made.[4] Nonetheless we conclude, for the most practical of reasons, that the restitution order imposed here was pursuant to the VWPA. The sentencing judge was obviously aware of both statutes. Where there is no further indication of the specific statute under which a sentencing judge is proceeding, we conclude that the intention must have been to proceed under the VWPA since to do other than that would simply be foolish. We echo the observation the First Circuit made in a discussion of this issue: "[W]e foresee little or no resort to Sec. 3651 [FPA] in the future, it having been effectively superceded in most cases by the broader restitution provision of the Victim and Witness Protection Act of 1982, 18 U.S.C. Sec. 3579." United States v. Ferrera, 746 F.2d 908, 914 (1st Cir.1984). We find this observation to be particularly cogent in light of the fact that the FPA restitution provisions were repealed effective November 1, 1987, except for crimes committed prior thereto. In short, unless a clear intention appears to the contrary, we will assume restitution orders are made pursuant to the broader provisions of the VWPA. This is not a repudiation of our analysis in United States v. Shackleford, 777 F.2d 1141 (6th Cir.1985), but rather an updating giving proper weight to the repeal of Sec. 3651.[5]
 
 III.
 
 22
 Having determined that the restitution order should be construed as one issued under the VWPA, we now address the issue as to whether there was insufficient compliance with the requirements of the VWPA so as to render the restitution order illegal.
 
 
 23
 In answering this question, we find guidance in our recent decision in United States v. Purther, 823 F.2d 965 (6th Cir.1987), as well as in the VWPA itself. The procedure for issuing an order of restitution under the VWPA is set forth in 18 U.S.C. Sec. 3664 which provides in relevant part:
 
 
 24
 (a) The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.
 
 
 25
 (b) The court may order the probation service of the court to obtain information pertaining to the factors set forth in subsection (a) of this section. The probation service of the court shall include the information collected in the report of presentence investigation or in a separate report, as the court directs.
 
 
 26
 (c) The court shall disclose to both the defendant and the attorney for the Government all portions of the presentence or other report pertaining to the matters described in subsection (a) of this section.
 
 
 27
 Our review of the record indicates that the trial judge did exactly what the statute allowed--he had the probation service prepare a presentence report which covered the relevant factors for consideration and made that report available to defendant and his counsel. The presentence report, which we have reviewed on appeal, contained a detailed report on defendant's financial condition, including information obtained from his income tax returns for the last several years and estimated values for properties owned by defendant. In reviewing the dictates of Sec. 3664, we noted in Purther:
 
 
 28
 This court has held that the record must contain some indication that the sentencing court considered the defendant's financial condition in ordering restitution. United States v. Durham, 755 F.2d 511 (6th Cir.1985). We have never held that the court must make findings on the defendant's financial condition, and it is clear that the statute does not require findings.... The statute only mandates that the sentencing court consider stated factors "and such other factors as the court deems appropriate." Sec. 3580(a). Once the required factors are considered the court has very broad discretion in setting the terms of the restitution order. United States v. Richard, 738 F.2d 1120, 1122 (10th Cir.1984).
 
 
 29
 Purther, 853 F.2d at 969. Purther, by analogy, makes it clear that where the court has the required information before it, and the defendant is given an opportunity to challenge such information, no specific findings need be made on the record. Padgett was aware from the time he entered his guilty plea that the court was considering restitution in the amount of $15,000. He never claimed inability to pay nor did he make any objection to the probation service recommendation as to the amount of restitution. On this issue we also note our approval of the method by which the victim's loss was ascertained. When one unknowingly buys a car that has had its odometer subtantially turned back, it is clear that the purchaser is not getting the value he bargained for. No further proof of this fact is necessary other than to point out that the only reason odometers are turned back is to falsely inflate the value of the car. In addition to the lost value a victim suffers, there is also the likelihood of increased, more expensive and earlier repairs and the annoyance and inconvenience associated therewith. It is hard to place a dollar value on these items and we think that the $1,500 referenced in the statute is a good benchmark and satisfies the government's burden of proof as to the nature of the loss.
 
 
 30
 Defendant was fully apprised of the manner in which the restitution award was computed and did not avail himself of the opportunity afforded at sentencing to complain. In addition, he had at least part of the custody portion of his sentence remitted. Under such circumstances we find no illegality justifying relief pursuant to Fed.R.Crim.P. 35(a).
 
 
 31
 AFFIRMED.
 
 
 
 [1]
 North Carolina v. Alford, 400 U.S. 25 (1970)
 
 
 [2]
 Pursuant to the Comprehensive Crime Control Act of 1984, 18 U.S.C. Sec. 3579 is renumbered as 18 U.S.C. Sec. 3663, effective Nov. 1, 1987. Pub.L. No. 98-473, Title II, c. II Sec. 212(a)(1), Oct. 12, 1984, 98 Stat. 1987. This legislation also repeals, effective Nov. 1, 1987, the provision for restitution set forth in 18 U.S.C. Sec. 3651 but only as to offenses committed after the effective date
 
 
 [3]
 The text of Fed.R.Crim.P. was amended by Pub.L. 98-473, Sec. 215(a)(5), Oct. 12, 1984, 98 Stat. 1987, but the pre-amendment rule applies to all offenses committed prior to Nov. 1, 1987
 
 
 [4]
 We repeat the admonition made earlier in United States v. Shackleford, 777 F.2d 1141, 1146 n. 4 (6th Cir.1985), that the sentencing judge should specify on the record the act under which restitution is imposed
 
 
 [5]
 In Shackleford we construed, against a strong dissent, an ambiguous restitution order to be under the FPA rather than the VWPA. Shackleford was fact specific, however, and did not purport to set forth a universal rule for the interpretation of restitution orders