895 F.2d 1414
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roy ANDERSON, Defendant-Appellant.
 Nos. 88-1469, 88-1510.
 United States Court of Appeals, Sixth Circuit.
 Feb. 20, 1990.
 
 Before KENNEDY and RYAN, Circuit Judges; and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant Roy Anderson was convicted by a jury on thirty-seven counts of making false claims against the government, in violation of 18 U.S.C. Sec. 287.[1] The trial judge sentenced defendant to five-years imprisonment on each count, to run concurrently. After a hearing, the judge ordered defendant to pay $20,506.62 in restitution. On appeal, defendant argues: (1) that the District Court abused its discretion in determining that jury impartiality had not been affected as a result of unauthorized contact by a third party with a jury; (2) that the evidence was not sufficient to support defendant's conviction on all counts; (3) that the District Court abused its discretion in admitting testimony of defendant's inculpatory statements and in allowing the United States to introduce photocopies; (4) that the District Court erred in finding that defendant failed to show that he was selectively prosecuted on the basis of an impermissible consideration; and (5) that the District Court erred by not considering defendant's financial situation in ordering restitution. Because we find these contentions to be without merit, we AFFIRM the defendant's conviction.
 
 
 2
 Defendant was a civilian employee at the United States Army Tank and Automotive Command (TACOM). As part of his duties, he was required to travel to various defense contractors in order to coordinate and facilitate production of parts for United States Army vehicles. The government charged at trial that the defendant developed a scheme to submit false travel payment vouchers to receive reimbursement for trips he had not taken, or for expenses greatly in excess of what he actually spent. Defendant was ultimately convicted of wrongfully obtaining $20,000 from the United States government.[2]
 
 
 3
 Defendant's scheme was discovered in July of 1985, when two TACOM employees discovered an unauthorized person, Joyce Love, in the travel voucher section after hours. Love was attempting to process completed voucher forms. The employees noticed that the vouchers, completed and signed by defendant, were suspicious in that the travel receipts were photocopied, completed on a typewriter rather than a computer, and reflected travel expenses in excess of that which was generally permitted.
 
 
 4
 The ensuing investigation revealed that defendant's past travel vouchers contained receipts for hotels that did not exist, and in each instance the defendant had submitted photocopied receipts instead of originals as required by Army regulations. An expert document examiner determined that the receipts were forgeries, generated by the use of a photocopy machine. The investigation also revealed that on many of the trips, the defendant did not visit the defense contractor he stated that he visited for the duration he claimed on his expense report or at all. Additionally, many of the receipts submitted by defendant were for more money than the hotel and car rental agency records showed.
 
 
 5
 During the investigation, defendant was interviewed twice. During the first interview, he told an agent from the Army's Criminal Investigation Division (CID) that mysterious voices on the telephone told him to turn in blank, signed travel vouchers and that someone else would fill them in for him. He also admitted that he knowingly received more money than he was entitled to and that he was aware that this was wrong. During a later interview with the FBI, defendant stated that if he did submit the false travel vouchers, he did so as a way of expressing his frustration with not being appreciated at work.
 
 
 6
 During defendant's trial, a man identifying himself as being from the Urban League separately approached two jurors outside of the courthouse. He handed each juror an envelope. One juror examined the outside of the envelope and handed it back to the man, stating that she preferred not to read it until the case was over. She then returned to the courtroom, accompanied by another juror who was nearby, and reported the incident to the court. The second juror accepted the envelope, immediately returned to the court, and handed over the sealed envelope and reported the incident to the judge.
 
 
 7
 The trial judge questioned each of the three jurors with respect to the incident, and each stated that the incident would not affect his or her ability to decide fairly the case before them. Further, the entire panel indicated that the incident would not affect its ability to decide the case. The judge instructed the jurors to put the incident out of their minds, and to decide the case based on the evidence introduced in court. No juror learned of the contents of the envelope.[3] The defendant did not object to this procedure, nor did he move for a mistrial at that time. On appeal, however, defendant argues that the District Court abused its discretion in determining that jury impartiality had not been affected.
 
 
 8
 "[T]he burden of proof rests upon a defendant to demonstrate that unauthorized communications with jurors resulted in actual juror partiality. Prejudice is not to be presumed." United States v. Pennell, 737 F.2d 521, 532 (6th Cir.1984) (citing Smith v. Phillips, 455 U.S. 209 (1982)), cert. denied, 469 U.S. 1158 (1985). "[A] district court's decision not to grant a mistrial after investigating allegations of unauthorized contact with jurors should be reviewed only for abuse of discretion." Pennell, 737 F.2d at 533. Further, "if a district court views juror assurances of continued impartiality to be credible, the court may rely upon such assurances in deciding whether a defendant has satisfied the burden of proving actual prejudice." Id.
 
 
 9
 Pennell involved five jurors who were telephoned at home and threatened. Id. at 527. Nonetheless, this Court held that the District Court did not abuse its discretion in refusing to grant the mistrial motion. In the present case, defendant has introduced no evidence that the jurors were unable to remain impartial. Further, the situation in the case at hand is not as likely to be prejudicial as that in Pennell, for here, the jurors never found out the contents of the envelope and were in no way threatened. Therefore, we find that defendant has not met his burden of showing impartiality and that the District Court properly relied upon the juror's assurances of their impartiality. Accordingly, we find that the District Court did not abuse its discretion by not granting a mistrial.
 
 
 10
 Defendant also argues that the evidence was not sufficient to convict him of the thirty-seven counts of which he was convicted. Specifically, he argues that for twenty-six of the counts, the government, through the testimony of a document examiner, showed only that the supporting documents in the voucher pockets were false.[4] With respect to each of these counts, the government introduced extrinsic evidence that Anderson claimed significantly more than he actually spent or that he never took the trip in question.
 
 
 11
 Section 287 of Title 18 of the United States Code states:
 
 
 12
 Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.
 
 
 13
 18 U.S.C. Sec. 287. Thus the government need not show that defendant intended to defraud the government, but only that defendant's claim was false and that he acted with knowledge of that falsity and with criminal intent.[5] Because no evidence was introduced to contradict the testimony of the document examiner, the jury could have reasonably concluded that this was the case with respect to defendant's claims.
 
 
 14
 Defendant also argues that counts 36 and 37 were only "attempts," because the receipts involved were confiscated from Joyce Love. We need not review this issue because defendant did not present it in his Rule 29 motion or any post-trial motion and the trial court did not commit an error so egregious as to likely produce a grave miscarriage of justice. United States v. Piccolo, 723 F.2d 1234, 1241 (6th Cir.1983) (en banc), cert. denied, 466 U.S. 970 (1984).[6]
 
 
 15
 Defendant next argues that the District Court abused its discretion in admitting the testimony of defendant's inculpatory statements and in allowing the government to introduce photocopies.
 
 
 16
 Defendant's statements regarding the unknown voices on the telephone were spoken during an interview with an agent from the CID. The agent testified that prior to that interview, which was held at the CID's office, the agent told defendant that he was not required to speak with the agent. Joint App. at 559. During the interview, defendant asked for a lawyer. At that time, the agent stopped questioning defendant and he left. The agent testified that he never took Anderson into custody. Joint App. at 559. The District Court heard defendant's motion to suppress between the two trials and held that Anderson was not in custody at the time of the questioning.
 
 
 17
 Defendant also spoke with an FBI agent, to whom he denied submitting false travel vouchers but stated that if he did do it, he did it to express his frustration at not being appreciated at work. This interview took place at TACOM. The agent read defendant his constitutional rights, and defendant stated that he was willing to talk. Joint App. at 701. The agent testified that during the interview, defendant was free to leave at any time, and did so after the interview. Again, between the first and second trials, the District Court found that defendant had been given his Miranda rights even though he was not in custody during the interview.
 
 
 18
 The ultimate inquiry in determining whether a suspect is "in custody" for the purpose of receiving Mirand protection is whether there is a "formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)). In the present case, there is no evidence that defendant's freedom was restrained in any way. As discussed above, defendant agreed to the questioning and was free to leave at all times during both interviews. Therefore, we find that the trial court did not abuse its discretion in admitting testimony regarding defendant's inculpatory statements.
 
 
 19
 With respect to the photocopied receipts that the court admitted into evidence, defendant argues that the court violated the "best evidence" rule of Fed.R.Evid. 1002. The "best evidence" rule provides that to prove the content of a writing, the original is required unless it is unavailable. Fed.R.Evid. 1002, 1004. An "original" of a writing is "the writing ... itself or any counterpart intended to have the same effect by a person executing or issuing it." Fed.R.Evid. 1001(3). The testimony at trial indicated that defendant used a photocopy machine to produce false receipts. Defendant intended that these photocopied receipts have the same effect as originals. In fact, the photocopied receipts fall within the first part of the definition of "original"; they are "the writing ... itself," for no other copy of these writings exists. The fact that the writings were produced through the use of a photocopy machine does not render them anything less than originals. Accordingly, we find that the District Court properly deemed the photocopies admissible as "originals."
 
 
 20
 Defendant next argues that the District Court erred in failing to find that he was prosecuted because of his race and because of his civil rights activities at TACOM. A defendant asserting selective prosecution:
 
 
 21
 "bears the heavy burden of establishing, at least prima facie, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him has been invidious or in bad faith...."
 
 
 22
 United States v. Hazel, 696 F.2d 473, 474 (6th Cir.1983) (quoting United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir.1974)) (emphasis in original).
 
 
 23
 Defendant has failed to show that others similarly situated to him were not prosecuted or that the government's prosecution of him was done with an invidious purpose. Defendant was convicted of receiving over $20,000 in a scheme that continued over several years and involved many false vouchers. The record does not reveal that any other TACOM employee was involved in such an extensive scheme where so much money was involved. At any rate, there was no evidence introduced to show that defendant was prosecuted with a discriminatory purpose. Thus the District Court's finding that there was no bad faith is not clearly erroneous. Accordingly, we find that the court did not abuse its discretion in failing to find that defendant had been selectively prosecuted.
 
 
 24
 Defendant's final argument is that the court failed to consider his financial needs and earning ability in ordering restitution. The procedure for issuing an order of restitution is contained in 18 U.S.C. Sec. 3664(a):
 
 
 25
 The court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.
 
 
 26
 The court need not make findings of the defendant's financial condition. United States v. Purther, 823 F.2d 965, 969 (6th Cir.1987). "The statute only mandates that the sentencing court consider stated factors 'and such other factors as the court deems appropriate.' " Id. (quoting 18 U.S.C. Sec. 3580(a)). Once the court has considered these factors, it has very broad discretion in setting the terms of the restitution order. Id. (citing United States v. Richard, 738 F.2d 1120, 1122 (10th Cir.1984)).
 
 
 27
 There is evidence that the court considered defendant's financial condition in ordering restitution. At sentencing, the government noted that the authorities at TACOM withheld pay and that Mr. Anderson's retirement account was frozen. Because TACOM withheld this money as a form of restitution, it can be assumed that these funds were sufficient to cover the court's ultimate order of restitution in the amount of $20,506.62. Furthermore, it does not appear from the record that defendant introduced any evidence with respect to his financial resources and obligations. When there is a dispute as to the amount of restitution, the government must show the amount of loss sustained by the victims. Then it becomes the defendant's burden to demonstrate the extent of his financial resources and obligations. 18 U.S.C. Sec. 3664(d); Purther, 823 F.2d at 970. This Court has stated:
 
 
 28
 Where the defendant offers no evidence with respect to these factors, the court should not be required to delay its decision further. In fact, the statute requires that imposition of restitution not "unduly complicate or prolong the sentencing process."
 
 
 29
 Id. (quoting 18 U.S.C. Sec. 3579(d)).
 
 
 30
 Thus we find that the court considered defendant's financial condition and did not abuse its discretion in ordering restitution in the amount that it did. Accordingly, we AFFIRM the District Court's order of restitution. Further, because we have found all of defendant's contentions to be without merit, we AFFIRM defendant's conviction.
 
 
 
 [1]
 Defendant was convicted at his second trial. At his first trial, the jury was unable to agree on a verdict and the District Court eventually declared a mistrial
 
 
 [2]
 The Army required documentation of expenses before it would reimburse the defendant. Defendant's scheme involved forging and altering expense receipts contained in the "voucher packets" he submitted
 
 
 [3]
 The trial judge read the contents of the envelope into the record outside of the presence of the jury. It contained one single-page document and a separate three-page document. The first document stated that Anderson was being treated unfairly by the judge and that the case was a product of racism. This document also referred to the first trial, which resulted in a mistrial. The second document, signed by defendant, described his civil rights activities at TACOM and alleged that he was being prosecuted as a result of his civil rights activities
 
 
 [4]
 For the other eleven counts, the testimony of defense contractors, motel and rental car clerks contradicted the defendant's claims made on the face of his travel vouchers. Defendant does not challenge the sufficiency of the evidence with respect to these counts
 
 
 [5]
 "Criminal intent may be proved either by a showing that the defendant acted for a specific purpose to violate the law or that he acted with an awareness that what he was doing was morally wrong, whether or not he had actual knowledge that he was doing something that the law forbids." United States v. Maher, 582 F.2d 842, 847 (4th Cir.1978), cert. denied, 439 U.S. 1115 (1979)
 
 
 [6]
 In fact, no error was committed at all, because the false claims statute requires only that someone present a false claim for payment; no payment need be made. United States v. Coachman, 727 F.2d 1293, 1302 (D.C.Cir.1984)