**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Choyce MCBRIDE, Defendant–
Appellant.**

**No. 01–3826.**

United States Court of Appeals,
Sixth Circuit.

May 6, 2002.

Before DAUGHTREY and MOORE, Circuit Judges, and ECONOMUS,* District Judge.

PER CURIAM.

The defendant, Choyce McBride, pleaded guilty to one count of a three-count indictment that charged tax evasion for the tax years 1992, 1993, and 1994. She was sentenced to 12 months of incarceration, to be followed by three years of supervised release, and she was ordered to make restitution in the amount of $12,229.61. On appeal, McBride challenges her sentence on two grounds. First, she argues that the district court erred by not ordering *sua sponte* a competency evaluation and hearing prior to sentencing. Second, she contends that the district court erred in ordering restitution in the full amount of the tax deficiency by not taking into account her inability to pay. We find no reversible error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The federal charges against defendant McBride stemmed from her failure to report income that she derived, largely illegally, from her job as the bookkeeper for Direct Mortgage in 1993, 1994, and 1995. She pleaded guilty to the second count of the indictment in return for the government's dismissal of the remaining counts. The district court found that McBride was competent to enter the guilty plea, pursuant to the plea agreement's provision that McBride could be held responsible for restitution to the IRS for tax loss from all three years.

The revised final presentence investigation report recommended that McBride be given a two-level enhancement under U.S. SENTENCING GUIDELINES § 2T1.1(b)(1) (1993) because more than $10,000 of the unreported income was derived from criminal activity. Specifically, the report stated that McBride had embezzled or misappropriated over $50,000 from her employer, Direct Mortgage. Based on the defendant's education level, employ-

---

* The Hon. Peter C. Economus, United States District Judge for the Northern District of Ohio, sitting by designation.

ment history, liabilities, and sources of income, the report recommended that McBride be required to pay in restitution the full amount of the tax loss on the ground that McBride was "very employable" and would "have the ability to make payments toward any Court ordered [sic] fine or restitution obligation." McBride objected to the two-level enhancement and the amount of tax loss stated in the report but did not object to the report's findings regarding her ability to pay the full amount of restitution. The report also noted that a month prior to entry of the plea, upon referral by her attorney, McBride met with Dr. Mossman, a psychiatrist at Good Samaritan Hospital, but that no information from Dr. Mossman had been received.[1]

The district court held several evidentiary hearings concerning McBride's objections, at which McBride and IRS Agent Stanley Holstein testified. Holstein indicated that McBride had made approximately 100 false entries in the Direct Mortgage check ledgers to cover income actually paid to herself or family members. Based on these unauthorized checks and additional unauthorized personal expenditures on the Direct Mortgage credit card, Holstein calculated that McBride received $69,042.59 in income from Direct Mortgage in 1993, none of which she reported on her income tax return, where she listed herself as a homemaker. Because Tom Dickey, the owner of Direct Mortgage, had informally agreed to pay McBride $200 and eventually $250 per week for 1993, over $50,000 of the money McBride received from Direct Mortgage was unauthorized.

McBride gave a series of implausible and contradictory statements about her conduct as a bookkeeper for Direct Mortgage. She testified that when she began working for Direct Mortgage in 1991, she did not have a set salary; instead, Dickey simply told her to use the company credit card and write herself checks, without mentioning the amount she was authorized to take. McBride admitted that she took more money from Direct Mortgage than she was authorized to take, but insisted that she did not intend to steal from or deceive her employer; rather, she simply did not realize at the time how much she had taken. When asked why she would falsify the check ledgers if she did not intend to hide what she was doing from her employer, McBride could not give an answer. Eventually, she conceded that she "probably" falsified the accounts to cover up how much she had taken.

At several points throughout the sentencing hearings, the district court expressed consternation over the implausibility of the defendant's testimony, which it considered "noncredible to an extreme" and "very close to an insult to its intelligence." Although the district judge initially expressed concern that the defendant's memory lapses could be attributable to psychological problems, he ultimately rejected this possibility when McBride's attorney conceded that the psychological tests performed by Dr. Mossman did not support this conclusion. McBride's attorney never argued that she was incompetent to stand trial, and the only argument he made regarding her psychological difficulties was that she should receive a downward departure because she did not benefit from her criminal activity but rather

---

1. The report also noted that between July 1994 and 1995, McBride sought treatment from psychiatrist Scott Nekrosious, whose office diagnosed her with "adjustment disorder with mixed emotional features" and deter-

mined that she had "a significant history of mental health issues and probably is genetically predisposed to some mental health problems."

"suffered an awful lot[,]" eventually losing her house and "her sanity, her health, her state of mind." In this context, McBride's attorney informed the court that his office had referred McBride to Dr. Mossman, who diagnosed her with "mild depression" which "she has recovered from and had recovered from at the time." At the final sentencing hearing, the court rejected the defendant's motion for downward departure, concluding:

> I found the defendant's testimony to be noncredible to an extreme, indeed that to such an extent that for the first time I believe in the thirty-some years that I've been doing this type of work, I suggested to counsel that there may well be a physical or an organic reason for some of her answers and counsel was good enough to advise me when we were together in June that that aspect had been considered and checked out and found not to exist. I simply do not feel that a downward departure in this case is warranted and, accordingly, none will be granted.

At the final sentencing hearing, the district court adopted all of the findings and recommendations of the presentence report except for the amount of tax loss, which it found the IRS had over-calculated. The court sentenced McBride to twelve months incarceration, three years of supervised release with conditions, a special assessment of $50.00, and restitution in the amount of $12,229.61.

## DISCUSSION

### 1. Standard of Review

Because the defendant failed to raise before the district court either of the two issues currently on appeal, we review the determinations of the district court for plain error. *See United States v. Schulte,* 264 F.3d 656, 660 (6th Cir.2001). "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

### 2. The district court's failure to order sua sponte a competency evaluation and hearing before sentencing

██ McBride argues that the district court erred by failing to order *sua sponte* a competency evaluation and hearing. 18 U.S.C. § 4241 requires a court to order a competency hearing "on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* Similarly, due process requires a court to order a competency hearing where there is substantial evidence of the defendant's incompetence to stand trial. *See Pate v. Smith,* 637 F.2d 1068, 1071 (6th Cir.1981) (citing *Pate v. Robinson,* 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966)). In determining whether a defendant is competent, the Supreme Court has emphasized that "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant ... but that even one of these factors standing alone, may, in some circumstances be sufficient." *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). In other words, taking all of these factors into consideration, we must decide " 'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt

with respect to [the defendant's] competency to stand trial." ' *Mackey v. Dutton*, 217 F.3d 399, 413–14 (6th Cir.2000) (internal citations omitted), *cert. denied*, 531 U.S. 1087, 121 S.Ct. 804, 148 L.Ed.2d 690 (2001).

The trial court judge in this case should have experienced no such doubt. At the sentencing hearing, the court found that McBride was "either purposefully not truthful or forgetful to such an extraordinary degree that *either* she's not being truthful there *or* she has significant cognition problems." (Emphasis added.) At that point, McBride's attorney informed the court that its concerns about McBride's cognitive abilities were not "borne out" by the testing conducted by Dr. Mossman. The court's decision to defer to the determination of the defendant's psychiatrist was entirely reasonable given that there was no other evidence in the record of incompetence. We have upheld decisions not to grant competency hearings in cases involving greater evidence of incompetence. *See Mackey*, 217 F.3d at 410–14 (upholding determination that defendant was competent despite an earlier diagnosis of schizophrenia and an affidavit from the defendant's lawyer stating that his client "exhibit[ed] great difficulty in communicating and assisting with his defense"); *Harper v. Parker*, 177 F.3d 567 (6th Cir.1999) (upholding determination that there was no "reasonable cause" to warrant an evaluation or full-blown competency hearing despite psychiatrist's earlier determination that the defendant was incompetent, extensive evidence of mental illness in the defendant's family, and the testimony of the defendant's attorney and mitigation specialists). Accordingly, we find no plain error.

### 3. The district court's order of $12,229.61 in restitution

■ McBride also argues that the district court erred in ordering restitution for the full amount of tax loss without taking into consideration her alleged inability to pay. Specifically, McBride contends that the district court either mistakenly applied the Mandatory Victims Restitution Act of 1996, 18 U.S.C. §§ 3663–3664 (1996), rather than the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3663–3664 (1982), which was the law in effect at the time of her crime, thereby violating the ex post facto clause, or else failed to consider the statutory factors set forth in the Victim and Witness Protection Act. The Victim and Witness Protection Act required the sentencing court to consider certain factors—including the defendant's ability to pay—in determining the amount of restitution, whereas the Mandatory Victims Restitution Act added provisions making restitution for certain crimes mandatory "without consideration of the economic circumstances of the defendant." *See* 18 U.S.C. §§ 3663A(a)(1) and 3664(f)(1)(A); *see also United States v. Schulte*, 264 F.3d 656, 661 (6th Cir.2001). Although the defendant is correct that applying the Mandatory Victims Restitution Act to conduct that occurred in 1993 would create an ex post facto problem, *see Schulte*, 264 F.3d at 661–62, there is simply no evidence in the record to suggest that the district court in fact failed to realize that restitution was not mandatory.

McBride nevertheless argues that by citing to "18 U.S.C. § 3663(a)" and "U.S.S.G. § 5E1.1(a)(2)," paragraphs 73 and 74 of the presentence report indicate that restitution is mandatory. However, we have rejected an identical argument in a similar case. *See United States v. Dunigan*, 163 F.3d 979, 981, n. 1 (6th Cir.1999). Nor does use of the word "shall" in paragraphs 73 and 74 of the presentence report indicate that restitution is mandatory, for the report explicitly states that the special as-

sessment is "mandatory" but never uses the term "mandatory" in reference to restitution. Moreover, in the section entitled "Financial Condition: Ability to Pay," the presentence report devotes considerable attention to the defendant's financial resources and specifically concludes that McBride will be able to pay the full amount of restitution despite her current lack of resources.

Nor did the district court violate the Victim and Witness Protection Act. Section 3664(a) provided:

> The court, in determining whether to order restitution ... and the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependants, and such other factors as the court deems appropriate.

*See also United States v. Padgett,* 892 F.2d 445, 448 (6th Cir.1989). However, under the Victim and Witness Protection Act, the district court need not make explicit findings regarding these factors. *See United States v. Faasse,* 265 F.3d 475, 491–92 (6th Cir.2001) (en banc). Rather, there must simply be "some indication" in the record that the court considered the relevant statutory factors; once these factors have been taken into account, "the court has very broad discretion in setting the terms of the restitution order." *See Padgett,* 892 F.2d at 449 (quoting *United States v. Purther,* 823 F.2d 965, 969 (6th Cir.1987) (internal citations omitted). Here, the presentence report acknowledged the defendant's current inability to pay but noted that in light of her employment experience, she was "very employable." The presentence report also noted that the defendant's husband earned an average of $5,000 per month. The district court adopted these findings, and the defendant fails to explain how these findings are inaccurate. Accordingly, we cannot say that the district court plainly erred in ordering McBride to pay restitution for the full amount of the tax loss. This is particularly true given the relatively small amount of restitution ordered; the cases in which we have reversed a district court's award of restitution for failure to consider adequately the defendant's ability to pay have involved far greater financial obligations in both absolute and relative terms. *See, e.g., Weinberger v. United States,* 268 F.3d 346, 356–57 (6th Cir.2001), *petition for cert. filed,* —— U.S. ——, 122 S.Ct. 1433, 152 L.Ed.2d 377 (2002), (reversing order requiring defendant, who earned $68,000 per year as a lawyer before conviction, to pay $1,280,000 in restitution over five years, due to the sentencing court's failure to consider the financial needs of the defendant's dependents and the effect of the defendant's disbarment on his earning power); *Dunigan,* 163 F.3d at 981–82 (reversing order requiring defendant, who before conviction had been earning $200 per week, to pay over $300,000 in restitution within three years, due to the sentencing court's failure to consider adequately the defendant's ability to pay).

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.