*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0208P (6th Cir.)
File Name: 00a0208p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ANDREW MACKEY,
    *Petitioner-Appellant,*

    *v.*

MICHAEL DUTTON, Warden,
    *Respondent-Appellee.*

No. 99-5352

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 93-01012—Robert L. Echols, Chief District Judge.

Argued: May 5, 2000

Decided and Filed: June 28, 2000

Before: BATCHELDER, MOORE, and BEEZER,[*] Circuit
Judges.

———————————

**COUNSEL**

**ARGUED:** Sumter L. Camp, FEDERAL PUBLIC
DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant.
Elizabeth B. Marney, OFFICE OF THE ATTORNEY

———————————

[*] The Honorable Robert R. Beezer, Circuit Judge of the United States
Court of Appeals for the Ninth Circuit, sitting by designation.

1

GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellee. **ON BRIEF:** Sumter L. Camp, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Elizabeth B. Marney, OFFICE OF THE ATTORNEY GENERAL, CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

KAREN NELSON MOORE, Circuit Judge. Andrew Mackey, a Tennessee prisoner who was convicted of rape and armed robbery in 1975, appeals the federal district court's denial of his petition for habeas corpus relief. Mackey raises two related arguments. First, he contends that the state trial court denied him due process by its "restrictive rulings on the issue of insanity," including its denial of his motion for an independent psychiatric examination and its refusal to grant a continuance to secure the attendance of his expert witness. Second, Mackey claims that the trial court's denial of an independent psychiatric examination and its refusal to hold a hearing on the issue of his competency to stand trial violated his right to due process. For the reasons set forth below, we **AFFIRM**.

## I. BACKGROUND

In 1975, a jury convicted petitioner-appellant Andrew Mackey of rape and armed robbery, and fixed his punishment at sixty-five years' imprisonment on the former charge and twenty years' imprisonment on the latter. The state trial court ordered that the sentences be served consecutively, for a total of eighty-five years of imprisonment.

Prior to trial, Mackey filed a petition for a psychiatric evaluation on grounds of both incompetency to stand trial and insanity at the time of commission of the crimes. In this petition, Mackey explained his history of mental illness and attached several supporting documents. First, Mackey

(quoting *Pate*, 637 F.2d at 1072) (internal quotation marks omitted), *cert. denied*, 461 U.S. 916 (1983). Applying § 2254(d)'s presumption of correctness, we conclude that the state trial court's competency determination is fairly supported by the record and is therefore entitled to complete deference.

The state trial court found no sufficient indication that Mackey was incompetent, and thus no basis for a psychiatric examination. This conclusion is firmly supported by the reports of Drs. Cheatham and Fidelholtz. Dr. Cheatham's report was perhaps the most reliable evidence of Mackey's mental status, as it occurred within months of the trial and was ordered for the purpose of determining Mackey's competency to stand trial on other charges; Dr. Cheatham concluded that Mackey had no mental disorder and that he possessed sufficient mental capacity to understand the nature of the charges against him and to assist in his defense. Similarly, Dr. Fidelholtz concluded that in 1971 Mackey was competent and able to advise counsel in his own defense. Additionally, the trial court had the benefit of observing Mackey's demeanor on other occasions, having presided over other of his criminal trials.

To be sure, Dr. Conroy's report as well as Ragan's affidavit stating that Mackey had difficulty assisting with his defense are suggestive of incompetency. However, the trial court may reasonably have given less weight to Dr. Conroy's diagnosis of schizophrenia in light of his ultimate finding that Mackey was competent to handle his own monetary benefits received from the Veterans Administration. Moreover, even if the evidence could support a finding that a sufficient doubt existed regarding Mackey's competency to warrant further inquiry, the trial court's determination that no such doubt existed is fairly supported by the record and must therefore be affirmed.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court denying habeas relief.

a trial court is better positioned to make decisions of this genre, and has therefore accorded the judgment of the jurist-observer "presumptive weight."

*Id.* (citations omitted). Because *Thompson*, which was decided after this court's decision in *Cremeans*, clearly instructs that competency should be treated as a question of fact, we follow that instruction and now hold that § 2254(d)'s presumption of correctness applies to a trial court's competency determination.[14]

## 2.  The State Court's Competency Determination

The question we must decide is "[w]hether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Williams v. Bordenkircher*, 696 F.2d 464, 467 (6th Cir.)

---

[14] In his brief, Mackey assumes that competency is a factual finding, but he nevertheless argues that this case fits within two of § 2254(d)'s exceptions. He first contends that the exception set forth in § 2254(d)(6) applies because he "did not receive a full, fair, and adequate hearing in the State court proceeding." In the instant case, the state trial court held a hearing on Mackey's motion for a psychiatric evaluation, but, finding that Mackey presented no convincing evidence of incompetency, it declined to order a psychiatric evaluation or any further competency hearings. Mackey does not premise his argument on any defect in the state court hearing on his motion; rather he argues that § 2254(d)(6) applies because no evidentiary hearing on the question of his competency was held. Second, Mackey argues that "the material facts were not adequately developed at the State court hearing" pursuant to the exception contained in § 2254(d)(3). This argument, too, is based solely on the trial court's refusal "to hold an evidentiary hearing at which counsel for Mr. Mackey could have the opportunity to put facts into evidence on the issue of his competency." Pet'r Br. at 40. However, Mackey's arguments were implicitly rejected by the Court in *Fulford*. In *Fulford*, the state trial court received evidence on the defendant's motion for a psychiatric evaluation, but it refused to order a further inquiry into the defendant's competency. Despite the fact that no evidentiary hearing on competency had been conducted by the trial court, the Supreme Court accorded the trial court's competency determination a presumption of correctness. *Fulford*, 462 U.S. at 117.

submitted the affidavit of one of his trial attorneys, Charles O. Ragan, Jr. Ragan's affidavit stated:

That based upon [] personal interviews [with Mackey and Mackey's treating doctors], it is the opinion of affiant that Andrew Mackey suffers from some sort of mental incapacity. This is based primarily upon his inability to respond to direct questions and then upon analysing [sic] the eventual response it appears he does not fully comprehend the circumstances. At times, his response and ability to assist counsel is better than at others, but on the whole he exhibits great difficulty in communicating and assisting in his defense.

Joint Appendix (hereinafter "J.A.") at 55 (Ragan Aff.).

Second, Mackey submitted a report from Dr. J.A. Conroy of the Veterans Administration Hospital in Murfreesboro, Tennessee, where Mackey was hospitalized from December 2, 1970 through December 31, 1970. Dr. Conroy's report diagnosed Mackey with "[s]chizophrenia, chronic, undifferentiated type, moderate, manifested by flattened affect, autistic ideation, hallucinations, delusions, ideas of reference and persecution, apprehensiveness, withdrawal, feelings of unreality, and a lack of insight or much sound judgment in an immature, inadequte [sic] person of long-term schizoidal orientation." J.A. at 57 (Conroy Report). Dr. Conroy's report further explained:

[Mackey] was admitted to this hospital for the first time on 12/2/70 having been sent here by the Nashville VA Hospital Outpatient Clinic because of a relapse in his psychosis. It is reported that he had been increasingly nervous, agitated, disturbed, unable to adjust and feared some harm might befall him and had many somatic complaints. The veteran has been in the Erlanger Hospital in Chattanooga, Tenn. several times for various somatic complaints. On admission here he was uncooperative, he had a long beard and refused to shave. He was delusional and apprehensive. He was sent to the closed ward, kept under observation and as he gradually

improved he was granted privileges. The routine physical examination on admission was not remarkable. . . . As the patient was agitating for his release from the hospital it was decided that soon after the staffing procedures he could be discharged. He was discharged at his own request effective 12/31/70. He is considered COMPETENT to handle VA funds.

J.A. at 57 (Conroy Report).

Third, documents detailing Mackey's problems while in the military and his honorable discharge therefrom were attached, including a report prepared by an examining psychiatrist dated July 13, 1970. This report indicated with regard to Mackey's mental status: "[He] related in a slow, confused but cooperative manner. Affect was inappropriate. He seemed quite worried and depressed. Could not do serial sevens and was not oriented to person, place, and time. Intelligence estimated at below normal." J.A. at 62 (Kurtz Report).

The petition also explained that Mackey received a head injury diagnosed as a cerebral concussion with inversion reaction in 1967 and was hospitalized at Erlanger Hospital for treatment, and that he had been admitted to Erlanger Hospital on two other occasions within the past three years for self-inflicted wounds.

In response, the State of Tennessee moved to include in the record a psychiatric report dated July 12, 1971 "to assist the Court in ruling on defendant's motion for additional psychiatric examination." J.A. at 74 (Mot. to Add Psychiatric Report). The State's report was prepared by Dr. J.N. Fidelholtz, the Director of the Maximum Security Unit of the Central State Psychiatric Hospital in Nashville, and was for the purpose of evaluating Mackey's mental status prior to an armed robbery trial. Dr. Fidelholtz wrote: "Our hospital staff came to the conclusion that [Mackey] is NOT INSANE at the present time. We believe he knows right from wrong and that he is competent to advise counsel in his own defense; therefore, we recommend his return to court for disposition of his case." J.A. at 75 (Fidelholtz Report).

In a case decided after the Supreme Court's *Fulford* decision, however, this court indicated that a state court's determination regarding a defendant's competency is a mixed question to which the presumption of correctness is inapplicable. In *Cremeans v. Chapleau*, 62 F.3d 167 (6th Cir. Aug. 14, 1995), *cert. denied*, 516 U.S. 1096 (1996), we cited *Drope* for the proposition that "[t]he question of whether Cremeans was competent to waive trial is a mixed question of law and fact." *Id.* at 169; *see also Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir.), *cert. denied*, 509 U.S. 907 (1993) ("A number of courts have held that the question of mental competency is a mixed question of law and fact. We agree. Because the state court's determination that Levine was mentally ill and dangerous was a mixed question of fact and law, it is not entitled to section 2254(d)'s presumption of correctness." (citations omitted)).

Just months after *Cremeans* was decided, the Supreme Court clarified that *Fulford* stood for the proposition that a state court's determination regarding a defendant's competency to stand trial should be accorded the presumption of correctness. *See Thompson v. Keohane*, 516 U.S. 99, 111 (Nov. 29, 1995). The *Thompson* Court explained:

In several cases, the Court has classified as "factual issues" within § 2254(d)'s compass questions extending beyond the determination of "what happened." This category notably includes: competency to stand trial; and juror impartiality. While these issues encompass more than "basic, primary, or historical facts," their resolution depends heavily on the trial court's appraisal of witness credibility and demeanor. This Court has reasoned that

competency is not a purely factual question, § 2254(d)(8) and its "fairly supported" standard are inapplicable. The Court offers no explanation whatsoever for the failure to follow *Drope* and *Pate*, and it would certainly not be appropriate to overrule these cases summarily.

*Fulford*, 462 U.S. at 118-19 (White, J., concurring in the judgment) (citations omitted).

U.S. at 174. "Rather, the dispute concerns the inferences that were to be drawn from the undisputed evidence and whether, in light of what was then known, the failure to make further inquiry into [defendant]'s competence to stand trial, denied him a fair trial. In such circumstances we believe it is 'incumbent upon us to analyze the facts in order that the appropriate enforcement of the federal right may be assured.'" *Id.* at 174-75 (quotation omitted).

In *Maggio v. Fulford*, 462 U.S. 111 (1983) (per curiam), however, the Court treated competency as a factual determination entitled to § 2254(d)'s presumption of correctness. In *Fulford*, on the morning of trial the defendant's counsel asked the trial court to appoint a commission to inquire into the defendant's competency. The state trial court refused to order a competency hearing, explaining in two per curiam opinions that there was insufficient likelihood of the defendant's incompetency to warrant appointing a commission. The Fifth Circuit granted the defendant habeas relief, but the Supreme Court reversed, reasoning that "the Court of Appeals erroneously substituted its own judgment as to the credibility of witnesses for that of the Louisiana courts — a prerogative which 28 U.S.C. § 2254 does not allow it." *Id.* at 113. The Court explained: "Before a federal habeas court undertakes to overturn factual conclusions made by a state court, it must determine that these conclusions are not 'fairly supported by the record.' 28 U.S.C. § 2254(d)(8). Under this standard we have not the slightest hesitation in saying that the trial court's conclusion as to Fulford's competency was 'fairly supported by the record.'" *Id.* at 117.[13]

---

[13]In a concurrence, Justice White objected to the majority's characterization of the issue of competency as a question of fact. Justice White, citing *Drope* and *Robinson*, explained:

Our cases have treated the ultimate question whether a defendant is competent to stand trial as at least a mixed question of law and fact. Our precedents notwithstanding, the Court today reverses the Court of Appeals on the strength of the conclusion that "the trial court's conclusion as to Fulford's competency was 'fairly supported by the record.'" But since

---

The trial court held a hearing on Mackey's petition for a psychiatric evaluation on January 8, 1975, and denied the petition on January 20, 1975. The trial court explained:

In addition to the documents attached to the petition, the State's attorney has called attention to a report by the then director of the Maximum Security Unit of Central State Hospital, dated July 12, 1971, in connection with a prosecution of the defendant for Armed Robbery and the Court has noticed the report of an examination made by J.S. Cheatman [sic], M.D., a specialist in psychiatry, made to the Court and this Judge on July 18, 1974, in connection with a prosecution of this defendant on a charge of Grand Larceny and Receiving and Concealing and Joyriding. The evaluation of Dr. Cheatman was made on a request of this Court on petition of the same attorney for the defendant, the defendant being indigent and the attorney being appointed. Dr. Cheatman concluded, "I am further of the opinion that he possesses sufficient mature capabilities to understand the nature of the procedures and charges against him to assist counsel in the preparation of his defense." Central State Hospital reported on July 12, 1971 as follows: "Hospital staff came to the conclusion that he is not insane at the present time. We believe he knows right from wrong and that he is competent to advise counsel in his own defense . . . ." It appears from the doctuments [sic] attached to the instant petition that the defendant has a long history of anti-social behavior, but there is nothing in the documents to indicat [sic] insanity past or present. . . . [T]here is not a sufficient showing to warrant a further psychiatric examination [of] this defendant, it is therefore accordingly ORDERED and ADJUDGED that the relief sought be denied and the petition [be] dismissed.

J.A. at 76-77 (Order Denying Mot. for Psychiatric Examination).

On January 23, 1975, five days prior to the scheduled date for trial, Mackey made a motion to cancel the trial assignment

in which he also requested an order permitting him to take the deposition of Dr. J.A. Conroy. The motion explained that Dr. Conroy, who had been subpoenaed to testify in support of Mackey's defense of insanity, was "too ill to travel and cannot appear in Court on January 28, 1975, but can give a deposition." J.A. at 78 (Mot. to Cancel Trial Assignment). The trial court heard argument on this motion the following day. At the hearing, the prosecutor opposed the continuance, but expressed reservations about going to trial without the defense's only expert witness, and so suggested that Dr. Conroy be deposed. The trial court overruled the motion as not well taken.

Mackey's trial proceeded with no expert witness testifying in support of Mackey's defense of insanity. Mackey did not testify before the jury, but his mother and father both testified as to his mental condition: "They said that in the months before these incidents the defendant was not acting normally and seemed 'off;' that he had suffered a head injury in high school and his behavior had changed. His parents said he did not appear to know the difference between right and wrong although they retreated from this to some extent on cross-examination." *Mackey v. Tennessee*, 537 S.W.2d 704, 706 (Tenn. Crim. App. 1975). The defense also presented the testimony of Emanuel Cranford, Mackey's high school football coach, who described an incident in which Mackey was knocked unconscious during football practice; the defense wanted to use Cranford's testimony to lay the groundwork for Dr. Conroy to testify that a serious concussion could have been a direct cause of mental illness. The trial court limited Cranford's testimony.

At trial, the State called Dr. James Cheatham to rebut Mackey's insanity defense. Dr. Cheatham testified that his examination of Mackey revealed that Mackey was competent to stand trial, and that on the date of the incident Mackey possessed the capacity to distinguish between right and wrong. Dr. Cheatham further testified: "In the instance of Mr. Mackey, within a reasonable degree of certainty, I can state that he was not schizophrenic at the time that I examined

explained that "[t]he presumption of correctness accorded to state court findings 'only applies to basic, primary facts, and not to mixed questions of law and fact,' and it 'applies to implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility.'" *Combs*, 205 F.3d at 277 (quotation omitted). Of course, "the proper characterization of a question as one of fact or law is sometimes slippery," *Thompson v. Keohane*, 516 U.S. 99, 110-11 (1995), and in this circuit some confusion surrounds the characterization of the competency determination. Today we hold that, pursuant to recent Supreme Court precedent, the competency determination should be treated as a question of fact for purposes of § 2254(d).

Early Supreme Court cases seemed to suggest that the ultimate question of a defendant's competency to stand trial was not a pure issue of historical fact meriting deference. In *Drope*, for example, the Court explained that there was no dispute as to the evidence concerning the defendant's mental condition that was before the state trial court. *See Drope*, 420

---

the State court hearing;
(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
(7) that the applicant was otherwise denied due process of law in the State court proceeding;
(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record[.]

28 U.S.C. § 2254(d).

behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient." *Drope*, 420 U.S. at 172, 180.

Just as did the petitioners in *Robinson* and *Drope*, Mackey challenges on due process grounds the failure of the state trial court to inquire properly into his competency to stand trial. Specifically, he contends that the trial court should have granted him a hearing on the issue of competency and granted his pretrial petition for a psychiatric examination (or granted him an evidentiary hearing on that petition). He argues that the evidence before the trial court sufficiently placed his legal competency into doubt such that the trial court should have conducted this further inquiry.

## 1. Standard of Review

Before addressing the merits of Mackey's claim, we must determine whether the state trial court's finding that there was no convincing evidence to suggest Mackey's incompetency is a factual finding entitled to a presumption of correctness pursuant to the former 28 U.S.C. § 2254(d).[12] We have

---

[12]The pre-AEDPA version of § 2254(d), which governs this case, provides:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at

---

him. And based upon my knowledge of Mr. Mackey, I would seriously question the accuracy of [Dr. Conroy's] diagnosis [of schizophrenia] in 1970." J.A. at 197 (Cheatham Test.).

The Tennessee Court of Criminal Appeals affirmed Mackey's conviction, *see Mackey v. Tennessee*, 537 S.W.2d 704, 709 (Tenn. Crim. App. 1975), and the Tennessee Supreme Court denied Mackey's petition for certiorari. After unsuccessfully pursuing state post-conviction relief, Mackey filed a pro se petition for a writ of habeas corpus in the United States District Court for the Middle District of Tennessee on December 9, 1993, and an amended petition on July 6, 1994 with the aid of appointed counsel. The amended petition alleged three grounds for relief. First, Mackey claimed that his due process right to present a defense was violated by several trial court rulings on the issue of insanity. Second, Mackey alleged that the trial court denied him due process and equal protection by failing to resolve properly the issue of his competency to stand trial. Finally, Mackey claimed that his right to counsel and his privilege against self-incrimination were violated by the admission of certain of Mackey's statements into evidence.[1]

On February 16, 1999, the district court issued an order denying Mackey's petition for a writ of habeas corpus. With regard to Mackey's claim that several of the trial court's rulings on insanity denied him his due process right to present a defense, the district court adopted the magistrate judge's recommendation as written. The magistrate judge reasoned that "[t]he combination of the trial judge's refusal to allow a continuance or deposition testimony of petitioner's expert and his denial of an independent psychiatric examination . . . worked to deprive petitioner of expert assistance in his

---

[1]By order of April 27, 1995, the district court limited the issues for review to whether Mackey was denied due process by: (1) the trial court's denial of Mackey's motion for a psychiatric examination and for a hearing on such motion; (2) the trial court's refusal to grant a continuance or to allow the deposition testimony of Dr. Conroy; and (3) the admission of Dr. Cheatham's testimony at trial.

assertion of the insanity defense." J.A. at 223-24 (Report and Recommendation). Although finding the trial court's preclusion of expert assistance to be error, the magistrate judge concluded that this error did not violate Mackey's constitutional rights because Mackey had not shown any factual basis for his claim that he was legally insane at the time of the offenses. With regard to Mackey's competency claim, the district court explained that a trial court has a duty to order a competency hearing if there is substantial evidence of a defendant's incompetency to stand trial. The district court reasoned, however, that the trial court's determination that no doubt existed regarding Mackey's competency was entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d), and it concluded that Mackey had failed to provide sufficient evidence to overcome this presumption.

In its order denying Mackey's habeas petition, the district court issued a certificate of probable cause to appeal pursuant to the former 28 U.S.C. § 2253. The issuance of a certificate of probable cause was consistent with this court's view that the amendments to 28 U.S.C. § 2253 imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[2] were inapplicable to habeas petitions filed prior

---

[2]The former 28 U.S.C. § 2253 provided that "[a]n appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause." AEDPA amended this portion of § 2253 to provide:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing

commission of the rape and armed robbery. Although Dr. Cheatham's examination was not for the purpose of determining whether Mackey was legally insane on April 24, Dr. Cheatham was able to form an opinion on that point based on the examination, and the examination occurred very near the time of the commission of the crimes. For these reasons, we do not believe that the trial court's failure to order another psychiatric examination denied Mackey due process of law.

## B. Competency to Stand Trial

In *Dusky v. United States*, 362 U.S. 402 (1960), the Supreme Court announced the test for evaluating a defendant's competency to stand trial: "[I]t is not enough for the district judge to find that 'the defendant [is] oriented to time and place and [has] some recollection of events,' but that the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'" *Id.* at 402 (latter two alterations in original). The conviction of a defendant who is legally incompetent violates a defendant's right to due process of law. *See Pate v. Robinson*, 383 U.S. 375, 378 (1966). Additionally, a court's failure to make a proper competency inquiry where there is substantial evidence of a defendant's incompetency violates due process by depriving the defendant of his right to a fair trial. *Robinson*, 383 U.S. at 385-86; *see also Drope v. Missouri*, 420 U.S. 162, 172 (1975) (explaining that *Robinson* held "that the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial"); *Pate v. Smith*, 637 F.2d 1068, 1072 (6th Cir. 1981) ("Once a reasonable doubt arises as to the competence of a person to stand trial, the issue must be decided on the basis of a hearing."). Although the Supreme Court has never "prescribe[d] a general standard with respect to the nature or quantum of evidence necessary to require resort to an adequate procedure" for determining competency, the Court has explained that "evidence of a defendant's irrational

defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense."). Mackey alleges that he was denied due process by the state trial court's failure to order an independent psychiatric examination.

In these circumstances, Mackey was entitled to a psychiatric examination pursuant to *Ake*. Mackey's sole defense was insanity, and he presented evidence that he had previously been diagnosed with chronic schizophrenia, a serious psychotic disorder. Mackey therefore made the requisite showing that sanity at the time of the offense was likely to be a significant trial issue.

However, Mackey was provided access to a competent psychiatrist — Dr. Cheatham. The same state trial judge who presided over Mackey's trial for rape and armed robbery had ordered Dr. Cheatham to examine Mackey at the request of the same defense attorney in connection with Mackey's prosecution on other charges. Although Dr. Cheatham's examination was not conducted in connection with Mackey's trial on the rape and armed robbery charges, it nevertheless took place less than three months after the commission of those offenses.[11] At trial, Dr. Cheatham testified that the state trial court ordered the examination "specifically to ascertain whether or nor Mr. Mackey was mentally ill, and also to render some opinion regarding his mental capacity with respect to some legal charges that were then pending against him," and he indicated that he "saw Mr. Mackey as a friend of the Court." J.A. at 188-89; 194 (Cheatham Test.). Dr. Cheatham testified that Mackey had no mental disorder and that he was able to distinguish right from wrong at the time of the examination on July 8, 1974. Dr. Cheatham also testified that Mackey possessed sufficient capacity to distinguish right from wrong on April 24, the date of the

---

[11]The rape and armed robbery occurred on April 24, 1974. Dr. Cheatham examined Mackey on July 8, 1974. Mackey's trial began on January 28, 1975.

to the effective date of that Act, even if the appeals were initiated after that date. *See, e.g., Caldwell v. Russell*, 181 F.3d 731, 735 & n.3 (6th Cir. 1999) (explaining that because the defendant instituted his § 2254 petition before April 24, 1996, the pre-AEDPA version of § 2253 controlled his right to appeal)*; Arredondo v. United States*, 120 F.3d 639, 640 (6th Cir. 1997) ("By amendment of 28 U.S.C. § 2253, Chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996 imposed a requirement that § 2255 petitioners obtain certificates of appealability in order to appeal district court decisions denying relief. In *Lindh v. Murphy*, however, the Supreme Court held that Chapter 153 cannot be applied retroactively to cases pending on the enactment date of the statute, April 24, 1996." (citation omitted)).

This Term, however, the Supreme Court held this view to be incorrect. In *Slack v. McDaniel*, --- U.S. --- , 120 S. Ct. 1595 (2000), the Supreme Court held that "when a habeas corpus petitioner seeks to initiate an appeal of the dismissal of a habeas corpus petition after April 24, 1996 (the effective date of AEDPA), the right to appeal is governed by the certificate of appealability (COA) requirements now found at 28 U.S.C. § 2253(c)." *Id.* at 1600. Therefore, with respect to appeals initiated after the effective date of AEDPA in habeas proceedings commenced prior to that date, pre-AEDPA law governs the appellate court's review of the trial court's ruling[3] while AEDPA's requirement of a certificate of appealability governs the right to appeal. Although in the instant case the district court granted a certificate of probable cause rather than a certificate of appealability, the issues involved in this appeal each satisfy the standard for issuance of a certificate of

---

required by paragraph (2). 28 U.S.C. § 2253.

[3]*See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). *Slack* affirmed *Lindh*'s holding "that AEDPA's amendments to 28 U.S.C. § 2254, the statute governing entitlement to habeas relief in the district court, [apply only] to cases filed after AEDPA's effective date." *Slack*, 120 S. Ct. at 1602.

appealability, and so we proceed to review the merits of Mackey's two claims.

## II. ANALYSIS

"We review a district court's denial of habeas corpus relief de novo, but we review any findings of fact made by the district court for clear error." *Combs v. Coyle*, 205 F.3d 269, 277 (6th Cir. 2000). A state court's factual findings are entitled to complete deference if supported by the evidence. *See id.* Because Mackey's habeas petition was filed prior to the effective date of AEDPA, we apply the pre-AEDPA version of 28 U.S.C. § 2254 in reviewing the district court's ruling. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

### A. Right to Present an Insanity Defense

Mackey first argues that the trial court's "restrictive rulings on the issue of insanity" violated his right to due process guaranteed by the Fifth and Fourteenth Amendments. Specifically, Mackey challenges the trial court's denial of his motion for an independent psychiatric examination and its refusal either to grant a continuance or to allow the deposition of Dr. Conroy, Mackey's expert witness on the issue of insanity.[4]

---

[4]Mackey also challenges the following rulings as violative of due process: (1) the admission of Dr. Cheatham's testimony, which was allegedly based on an inadequate examination; and (2) the limiting of the testimony of defense witness Emanuel Cranford. We have carefully reviewed these claims and find each to be without merit. The admission of Dr. Cheatham's testimony was proper. Dr. Cheatham was certified as a specialist in psychiatry by the American Board of Psychiatry and Neurology, his testimony was relevant, and Mackey had the opportunity to cross-examine him about the brevity of the examination. Mackey has also failed to show that the trial court's limiting of Cranford's testimony deprived him of a fundamentally fair trial, as Cranford's testimony did not go directly to the question of Mackey's legal insanity.

---

report was read aloud at trial.[9] To the extent, therefore, that Dr. Conroy's diagnosis of schizophrenia in 1970 would have been relevant to Mackey's legal insanity in April of 1974, the jury was provided with that information.[10]

For these reasons, although we believe the trial court's ruling to be in error, we must conclude that Mackey was not deprived of a fundamentally fair trial.

### 2. Psychiatric Examination

A criminal defendant's right to due process also includes the right to an examination by a competent psychiatrist when sanity is likely to be a significant factor at trial. *See Ake v. Oklahoma*, 470 U.S. 68, 83 (1985) ("We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is likely to be a significant factor at trial, the State must, at a minimum, assure the

---

[9]At the trial, on cross-examination Mackey's counsel asked Dr. Cheatham if he had reviewed Dr. Conroy's report prior to his examination of Mackey. Dr. Cheatham answered that he had, and upon defense counsel's request he then read the diagnosis from the report to the jury:

> Yes, sir, the diagnosis — and I'm quoting from this form — is "schizophrenia, chronic, undifferentiated type, moderate, manifested by flattened affect, autistic ideation, hallucinations, delusions, ideas of reference and persecution, apprehensiveness, withdrawal, feelings of unreality, and a lack of insight or much sound judgment in an immature, inadequate person of long-term schizoidal orientation.["]

J.A. at 195 (Cheatham Test.).

[10]This case is therefore substantially different than *Bennett*. In *Bennett*, we granted habeas relief on the basis of the trial court's refusal to grant an overnight continuance so that the defendant could secure the attendance of a subpoenaed witness. *See Bennett*, 793 F.2d at 777. At trial, the defendant testified that he killed the victim because he thought she was reaching for a knife; the subpoenaed witness would have testified about the victim's reputation for violence and the likelihood that the victim would have attacked someone with her knife. *See id.* at 774. Unlike the instant case, the defendant in *Bennett* made a proper showing of the nature of the expected testimony, which would undoubtedly have been favorable to the defendant.

even interviewed Dr. Conroy regarding the content of his testimony.

Second, Mackey has not established that Dr. Conroy's testimony would have been favorable to his defense of insanity. Because Mackey failed to make an offer of proof, the only indication of Dr. Conroy's expected testimony that the trial court had before it was the 1970 report. The 1970 report, however, did not speak to the ultimate issue — legal insanity at the time the offenses were committed in 1974. In *Matlock v. Rose*, 731 F.2d 1236 (6th Cir. 1984), *cert. denied*, 470 U.S. 1050 (1985), we held that no due process violation occurred when the trial court limited the testimony of the defense's expert witness because the excluded testimony would not have supported a defense of insanity under Tennessee law. *See id.* at 1243. As in *Matlock*, Mackey has presented no evidence that Dr. Conroy's testimony would have gone to his inability to appreciate the wrongfulness of his conduct at the time of the offense. *See Spurlock v. Tennessee*, 368 S.W.2d 299, 301 (Tenn. 1963) (stating the test for determining the question of criminal responsibility that was followed in Tennessee until 1977: "[I]f a person at the time of the commission of an alleged crime has sufficient mental capacity to understand the nature and quality of the particular act or acts constituting the crime and to know whether they are right or wrong, he is responsible if he commits such act or acts, whatever may be his capacity in other particulars; but if he does not possess this degree or capacity, then he is not so responsible." (quotation omitted)); *cf. Hicks v. Wainwright*, 633 F.2d 1146, 1149 (5th Cir. 1981) (holding that the trial court's denial of a short continuance in order to secure the attendance of the defendant's only expert witness on his insanity defense violated the defendant's right to due process, where the expert would have testified that the defendant was legally insane at the time of the offense for which he was being tried). Moreover, Dr. Conroy's 1970

### 1. Continuance

Mackey alleges that the trial court's failure to grant a continuance on the basis that the defense's sole expert witness was too ill to travel at the time of trial, and its failure to allow the deposition testimony of the expert, denied him due process by thwarting his ability to present a defense. Mackey argues that there was no reason for denying the continuance, as the prosecution would not have been prejudiced in any way, and he points out that the trial court had earlier continued the trial so that the prosecution's expert could attend. Mackey explains: "Dr. Conroy had treated Mr. Mackey at the Veteran's Administration hospital in Murfreesboro, Tennessee, and could testify about his history of chronic paranoia with its attendant hallucinations, delusions and feelings of unreality, and would have been asked by Mr. Mackey's counsel to examine Mr. Mackey and/or to answer a hypothetical question based on his knowledge of Mr. Mackey's history." Pet'r Br. at 20.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) (holding that the state court's exclusion of three exculpatory witnesses on grounds of hearsay, coupled with the state court's refusal to permit the defendant to cross-examine a witness who had previously confessed to the crime for which the defendant was being tried, denied the defendant a fair trial); *see also Washington v. Texas*, 388 U.S. 14, 23 (1967) (holding that the defendant was denied his right to compulsory process "because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense").

A trial court's failure to grant a continuance to enable a defendant to exercise his constitutionally protected right to offer the testimony of witnesses and to compel their attendance may, in some circumstances, constitute a denial of due process. *See Bennett v. Scroggy*, 793 F.2d 772, 774 (6th Cir. 1986). "When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Brown v. O'Dea*, 187 F.3d 572, 580 (6th Cir. 1999) (quoting *Bennett*, 793 F.2d at 774) (internal quotation marks omitted), *petition for cert. filed*, 68 U.S.L.W. 3496 (U.S. Jan. 24, 2000) (No. 99-1264).[5] To warrant habeas relief, "[t]here must also be some showing that granting the continuance would have furthered the court's attempt to secure a just determination of the cause." *Bennett*, 793 F.2d at 775. We have considered the following factors in determining whether an accused was deprived of his right to due process by a denial of a motion for a continuance: "the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative

---

[5]The Supreme Court has explained, in the context of analyzing a claim that a denial of a continuance deprived the defendant of his constitutional right to counsel:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (citations omitted).

nature of the testimony." *Id.* at 774 (quoting *Hicks v. Wainwright*, 633 F.2d 1146, 1149 (5th Cir. 1981)) (internal quotation marks omitted).

We begin by expressing our disapproval of the state trial court's refusal to allow Mackey the opportunity to present, in some way, the testimony of Dr. Conroy. As a result of the trial court's ruling, Mackey's trial proceeded without an expert testifying in support of his sole defense of insanity. As the Supreme Court has recognized, the testimony of a psychiatrist is crucial to a successful insanity defense. *See Ake v. Oklahoma*, 470 U.S. 68, 81 (1985) ("When jurors make this [insanity] determination about issues that inevitably are complex and foreign, the testimony of psychiatrists can be crucial and 'a virtual necessity if an insanity plea is to have any chance of success.'").[6] In light of the serious nature of the charges against Mackey and the centrality of expert testimony to his defense, it was error to refuse to allow Dr. Conroy's deposition or to grant a brief continuance.

However, using the *Bennett* factors as guidance, we are unable to conclude that the trial court's ruling denied Mackey a fundamentally fair trial.[7] First, Mackey was unable to state with any specificity the content of Dr. Conroy's expected testimony. Mackey did not submit an affidavit summarizing for the trial court Dr. Conroy's expected testimony, nor did he provide the trial court with any such information at the hearing on his motion for a continuance.[8] Indeed, there is no evidence in the record suggesting that Mackey's counsel had

---

[6]Even the prosecution recognized and alerted the state trial court that it was problematic to allow the trial to proceed without some expert testimony in support of the defense.

[7]Indeed, the only *Bennett* factor that militates in Mackey's favor is the non-cumulative nature of Dr. Conroy's testimony.

[8]At the hearing, Mackey's counsel explained only that Dr. Conroy was too ill to travel and offered an affidavit to that effect.