**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 04a0102n.06
Filed: November 18, 2004

No. 03-3552

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

EDNA FINLEY,
    *Petitioner-Appellant,*

                v.

SHIRLEY A. ROGERS, WARDEN,
    *Respondent-Appellee.*

_____/

On Appeal from the
United States District Court for
the Southern District of Ohio

BEFORE: KENNEDY and GILMAN, Circuit Judges; and HOOD, District Judge.[*]

KENNEDY, Circuit Judge.

Petitioner Edna Finley appeals from the district court's denial of her request for a writ of habeas corpus on the grounds that the district court erred when it held that it was not objectively unreasonable for the Ohio state court to find that 1) she was competent to stand trial, 2) her statements to the police were not involuntary, and 3) she voluntarily, intelligently, and knowingly waived her *Miranda* rights. For the following reasons, we AFFIRM.

**BACKGROUND**

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

Finley was convicted of aggravated murder with firearm and death specifications. At the penalty phase of the trial, the jury recommended that she be sentenced to life in prison with parole eligibility after thirty years. The judge adopted the recommendation and sentenced her accordingly.

The victim of the murder was Finley's daughter-in-law, Donna Finley. Finley's son, Thomas Finley, Jr., who was married to the victim, and his girlfriend, Velma Lemmings, were also charged with the murder. Both Finley Jr. and Lemmings pled guilty to the charges brought against them.

When Finley was arrested, she made statements to the police that she subsequently moved to suppress. On April 21, 1994, the trial court held a hearing on Finley's motion to suppress during which her expert, Dr. Jeffrey Smalldon, a clinical psychologist, testified concerning her mental capacity to understand her *Miranda* rights and her ability to waive those rights. Based on Dr. Smalldon's testimony, the trial court determined that the issue of her competency to stand trial had been raised and that further hearings on the matter were required. Three competency hearings were subsequently held. At the first two, Petitioner was found incompetent but restorable; at the third, she was found competent. At a motion to suppress hearing on January 4, 1996, the trial judge found that she was capable of understanding and waiving her *Miranda* rights and that she had done so knowingly and intelligently. After a jury found Petitioner guilty of the aggravated murder charge, she appealed to the Ohio Court of Appeals, which affirmed her conviction. Thereafter, she petitioned the district court for a writ of habeas corpus, pleading the following three grounds for relief:

> Ground One. It is a violation of Petitioner's Constitutionally protected . . . right to due process and a fair trial when Petitioner is compelled to stand trial after being twice found incompetent, when the state has not shouldered the burden of proving competence by a preponderance of the evidence.

2

Ground Two. Petitioner's Constitutional right to due process was violated when her involuntary statements were used against her at trial

Ground Three. Petitioner's Constitutional rights were violated when her *Miranda* waiver was not made voluntarily, intelligently, and knowingly.

The district court denied Petitioner's requested relief on all three grounds, holding that the Ohio Court of Appeals had not unreasonably applied clearly established federal law to the facts when it concluded that the evidence supported the trial court's findings that Finley was competent to stand trial, that the statements she made to the police were not involuntarily coerced, and that she voluntarily, knowingly, and intelligently waived her *Miranda* rights.

## STANDARD OF REVIEW

We review the district court's decision to deny a writ of habeas corpus *de novo* and its factual findings for clear error. *Delisle v. Rivers*, 161 F.3d 370, 380 (6th Cir. 1998) (en banc). Since Finley was incarcerated pursuant to the judgment of a state court, our review of her application is governed by the amendments made to 28 U.S.C. § 2254(d) by the Antiterrorism and Effective Death Penalty Act (AEDPA). Section 2254(d) reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

3

The Petitioner challenges her state court conviction on the ground that it resulted from an unreasonable application of clearly established federal law. This court has previously recognized that, by amending § 2254(d)(1) through the AEDPA, Congress intended to place "reasonable state court judgments beyond the scope of federal review." *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998). Moreover, under § 2254(d)(1)'s "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (noting that "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous").

The Petitioner also challenges her state court conviction on the ground that it resulted from an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. § 2254(d)(2). The state court's factual determinations, however, are presumed correct. § 2254(e)(1). Moreover, before we can grant the Petitioner relief on the ground that her detention resulted from a decision that was based on an unreasonable determination of the facts in light of the evidence presented, she must establish by *clear and convincing* evidence that the state court's factual determinations were incorrect. *Id*.

## ANALYSIS

### I.

We first consider Petitioner's argument that her Fifth and Fourteenth Amendment rights to due process were violated when she was compelled to stand trial after being found competent.

4

It is well established that the trial of an incompetent defendant violates due process. *See Dusky v. United States*, 362 U.S. 402 (1960). The standard for competence to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Id*. In assessing whether Petitioner met this standard, the Ohio Court of Appeals summarized the evidence regarding Petitioner's competence to stand trial as follows:

> On June 9, 1994, the trial court held a competency hearing. On behalf of the State, Dr. Bobbie Hopes, . . . testified that she had tested Finley's intellectual functioning and concluded that Finley had a verbal I.Q. of 73, which indicates borderline intellectual functioning. Dr. Hopes testified that she also administered the Georgia Court Competency Test, which tested Finley's understanding of court proceedings and her ability to assist in her defense. Finley scored an 80 out of 100, with 70 being the threshold for competency. Based on the test scores, Dr. Hopes concluded that Finley was competent to stand trial.

> On behalf of Finley, Dr.[Smalldon] testified that Finley had borderline intellectual functioning and [that she] was not competent to stand trial. However, Dr. [Smalldon] also testified that Finley did not suffer from a mental illness and that she was not mentally retarded. Dr.[Smalldon] opined that Finley could be restored to competency. Based on the evidence presented . . . , the trial court determined that Finley was not competent ... but that she could be restored.

> On October 4, 1994, the trial court held a second competency hearing. [The State's expert, Dr. Mossman,] questioned Finley regarding her understanding of the legal charges against her and the judicial process. He also had administered the Georgia Court Competency test, and Finley scored 76 points, within the range of competency. Based on his evaluation, Dr. Mossman opined that Finley was competent.

> On behalf of Finley, Dr. Smalldon testified that Finley was unable to describe to him the role of the attorneys in the trial, the charges against her, or the penalties associated with the charges. Based on his evaluation, Dr. Smalldon opined that Finley was incompetent to stand trial. Based on the experts' testimony, the trial court ruled that Fiunley was not competent to stand trial but that she might be restorable to competency.

> On May 22, 1995, the trial court held a third competency hearing. Dr. Mossman testified that his testing of Finley indicated that she was exaggerating her mental problems. Dr. Mossman had administered the Symptom Validity Test, which indicated that Finley was malingering, and he further noted that in conversation Finley claimed she could not recall details of the incidents relating to the alleged crime that she recalled with specificity ten

months after the killing. Dr. Mossman opined that . . . Finley . . . had the ability to understand the implications of her acts and the nature of the proceedings against her.

[Psychological assistant Dixon Wulff, who] was responsible for assessing Finley's progress within the treatment plan for restoration of her competence . . . , testified that Finley told him . . . that she believed she was incompetent and could no longer remember the events relating to the alleged crime. [Mr.] Wulff opined that Finley was malingering by choosing not to remember events so as to appear more mentally deficient and that she was competent to stand trial.

Dr. Smalldon opined that Finley's desire to assist defense counsel by taking various competency tests ... was inconsistent with the opinion that she was malingering. Further, [he] testified that Finley was unable to satisfactorily describe the charges against her and the role of the prosecutor. In sum, Dr. Smalldon opined that Finley was not competent to stand trial.

*State v. Finley*, No. 96-CA-30, 1998 WL 321017 at *2-3 (Ohio Ct. App., June 19, 1998).

At the conclusion of the third hearing, the trial court found that Petitioner was competent to stand trial. The Ohio Court of Appeals affirmed, concluding, "we find that the State presented sufficient evidence during the third competency hearing to rebut the presumption of Finley's incompetence . . . . Moreover, we find that the testimony of [Dr. Mossman and Wulff] was sufficient to sustain the trial court's decision. The evidence presented during the competency hearings supports the conclusion that Finley was competent to stand trial." *Id.*

Petitioner asserts that the question whether a defendant is competent is a mixed question of law and fact. Therefore, she contends, the state court's determination that Petitioner was competent to stand trial should not be presumed correct. Reviewing the competency determination *de novo*, we must find, Petitioner argues, that the conclusion that Petitioner was competent was based on an "unreasonable determination of the facts in light of the evidence presented." § 2254(d)(2).

The question whether a defendant is competent to stand trial, however, is a question of fact for purposes of the AEDPA. *Mackey v. Dutton*, 217 F.3d 399, 412 (6th Cir. 2000); *see also*

6

*Thompson v. Keohane*, 516 U.S. 99, 111 (1995). Therefore, we must accord the state court's determination that Petitioner was competent to stand trial a presumption of correctness. Section 2254(e)(1) provides that for the Petitioner to prevail on her claim of relief, she must rebut this presumption by clear and convincing evidence. The Petitioner has failed to offer any evidence sufficient to rebut this presumption.

The Petitioner also asserts that the state court's finding of competence resulted from an unreasonable application of clearly established federal law. § 2254(d)(1). She claims that her conviction violated the standards enunciated in *Dusky* since the state failed to establish that she had sufficient capability to understand the proceedings against her and to assist in her defense. The Petitioner notes that she was found incompetent in the first and second competency hearings. She argues that the only new evidence introduced during the third competency hearing were the opinions of Dr. Mossman and Mr. Wulff that she was malingering. Petitioner asserts that the assessment that she might be malingering does not establish that she was competent. Hinging Petitioner's competency decision on the conclusion that she was malingering, she concludes, demonstrates an improper application of the law to the facts.

In contrast to the Petitioner's characterization of the state court's finding of competence, we note that the state court found Petitioner competent not merely on the basis that she was malingering, but also upon the conclusions of Dr. Mossman and Mr. Wulff, both of whom concluded that she was competent to stand trial. During the final hearing, Dr. Mossman and Mr. Wulff testified that she was competent but malingering and exaggerating her mental problems and her difficulties with memories. Moreover, she twice placed above the threshold for competency when she took the

7

Georgia Court Competency test. After reviewing this evidence, we cannot conclude that the Ohio court's application of law to fact was objectively unreasonable.[1]

## II.

In her second ground of relief, Petitioner asserts that her confession was involuntarily obtained, and thus that it was unconstitutional to admit it against her at trial.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions against the accused. *Jackson v. Denno*, 378 U.S. 368, 376 (1964). A confession is considered involuntary if 1) the police extorted the confession by means of coercive activity, 2) the coercion in question was sufficient to overbear the will of the accused, and 3) the will of the accused was in fact overborne because of the coercive police activity in question. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988). To determine whether an accuser's confession is involuntary, a totality-of-the-circumstances test is employed. *Withrow v. Williams*, 507 U.S. 680, 688-89 (1993). Factors to weigh include the age, education, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. *See Arizona v. Fulminante*, 479 U.S. 279, 286 (1991); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

Petitioner contends that the totality of circumstances establish that her statement to the police was not voluntarily given. She first notes that the police searched her house for 8 hours before

---

[1] The Petitioner also asserts that her due process rights were violated when the Ohio Court of Appeals failed to conclude that the burden to prove competence shifts to the state once a court has already concluded the accused to be incompetent. The trial court did, however, hold the state to proving that the Petitioner was competent to stand trial. The Ohio court of appeals statement that it would only have held the state to the burden of production, and not to the higher standard of sustaining the burden of proof, is merely dicta in light of its conclusion that the state met this higher standard in establishing that the Petitioner was competent to stand trial.

bringing her to the police station for questioning and that she was 59 years old at the time. Neither of these factors support the conclusion that her statement was involuntary. Although the duration and intensity of an interrogation may be relevant to the question of voluntariness, the fact that the police searched her house before the interrogation is irrelevant to the issue. Similarly, although age can be relevant to the question of voluntariness, the mere recitation of her age, especially one that is not particularly elderly, does not support the conclusion that her statement was involuntary.

In support of her argument that her statement was involuntary, she primarily relies upon her contention that the police induced her to make a statement by promising leniency. Her argument is based upon the following exchange. At one point during the interrogation, Petitioner asked "what will happen to me." The interrogating officer responded, "I can't promise you. . . . The only thing I can tell you, . . . I can tell the Prosecutor, I can tell the Judge that you [sat] here and leveled with us." In response to the argument that this statement contained a promise of leniency, the Ohio Court of Appeals concluded:

> [Petitioner] is unable to identify any representation made by the officers that reasonably led her to believe that she would receive some specific benefit, in the nature of more lenient treatment, in return for her cooperation. In response to [Petitioner]'s question what would happen to her if she cooperated with the officers, the officers indicated that they could not promise her what would happen to her but that they could inform the prosecutor and judge of her cooperation. The officers gave no indication of any lenient treatment resulting from their informing the prosecutor and judge.

*State v. Finley*, No. 96-CA-30, 1998 WL 321017 at *9 (Ohio App. 2 Dist., June 19, 1998).

The question before us is whether the Ohio Court of Appeals' conclusion that the Petitioner's statement was not involuntary was an unreasonable application of clearly established federal law to the facts. Since the Ohio Court of Appeals correctly applied the totality of-the-circumstances test and reasonably weighed all the relevant factors in reaching its decision, we conclude that it did not.

9

## III.

Finally, we must consider whether the Ohio Court of Appeals unreasonably applied clearly establish federal law to the facts when it held that Petitioner voluntarily, intelligently, and knowingly waived her *Miranda* rights.

For a statement made by the accused to be admitted in evidence, the prosecution must show that the accused effected a voluntary, knowing, and intelligent waiver of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Supreme Court has noted that for a waiver to be effective, it "must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). However, the Court has never "read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Colorado v. Spring*, 479 U.S. 564, 576-77 (1987). Such additional information, the Court has noted, "could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature." *Id*. at 577.

The Petitioner contends that in light of her subnormal intelligence, the state failed to show that her waiver was made with the necessary awareness of the rights being abandoned and the consequences of the decision to abandon it. After the Petitioner was brought down to the police station for questioning, the following exchange concerning her *Miranda* rights occurred:

Spkr. One: Before we ask you any questions, I want you to understand that you have the right to remain silent. Do you understand that?

Finley: Yes, sir.

Spkr One: Anything that you say will be used against you in court. Do you understand that?

Finley: Yes sir

10

Spkr One: Okay, you have the right to consult with a lawyer before we ask you any questions and have him with you during any questioning. Do you understand that?

Finley: Yes sir

Spkr. One: If you cannot afford a lawyer, one will be appointed before any questioning if you wish. Do you understand that?

Finley: Yes

Spkr. One: If you decide to answer questions now without a lawyer present, you still have the right to stop answering at any time. Do you understand your Constitutional rights?

Finley: Yes, sir

Spkr One: Okay. Here's a waiver, it says I have read this statement of my rights and I understand what my rights are, [and I am] willing to make a statement and answer questions. Are you willing to make a statement and answer our questions here today?

Finley: I don't understand what you want to ask.

Spkr Three: [If] [y]ou don't want to answer us, you don't have to answer us.

Finley: Okay

Spkr Three: Okay? Do you agree with that?

Finley: Yes, sir

Spkr Three: Okay. It says I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me. Do you know what coercion is? I'm not pulling your hair and twisting your arm to get you to talk, that's what that means basically, okay? This is your rights form that I just read to you. I need your signature here that says I read you your rights and you understand what your rights are.

Petitioner signed the waiver form. In response to the argument that Petitioner did not voluntarily, knowingly, and intelligently waive her *Miranda* rights, the Ohio Court of Appeals concluded as follows:

[Petitioner] received an adequate explanation of her *Miranda* rights by the interrogating officers, affirmatively responded that she understood and waived her rights, and answered

11

the officers' ensuing questions responsively. There is sufficient testimony by the State's expert witnesses relating to Finley's mental abilities to support the finding that she was intellectually capable of understanding and waiving her *Miranda* rights. With respect to the officer's explanation of the word "coercion," we find that it was sufficient for the purposes of conveying to Finley the notion that the police did not force her to cooperate. In short, we find that the record supports the trial court's finding that Finley was mentally capable of waiving her *Miranda* rights and did so knowingly and intelligently.

*State v. Finley*, No. 96-CA-30, 1998 WL 321017 at *9-10 (Ohio App. 2 Dist., June 19, 1998).

We conclude that the Ohio Court of Appeals decision was not an unreasonable application of clearly established federal law to the facts. There was clear evidence in the record that the *Miranda* rights had been read to Petitioner, that she understood them, that she understood the waiver, and that she signed it and answered questions voluntarily. While Petitioner is of below average intelligence, that does not establish that she is *per se* unable to understand her *Miranda* rights. Rather, as the district court noted, there is nothing cognitively complex about the advice that one has a right to remain silent and not to talk to the police.

For the foregoing reasons, we AFFIRM.

12